Argued October 10, reversed and remanded November 15, 1974

DAY, *Appellant, v.* SAUNDERS ET AL, *Respondents.*

528 P2d 513

*Francis F. Yunker,* Portland, argued the cause for appellant. With him on the briefs was Bert E. Joachims, Portland.

*Gerald H. Robinson,* Portland, argued the cause for respondents Saunders, Sharp, Parker and New-U Products, Inc. With him on the brief were Jack Cairns, Bernard Shevach, and Roger Tilbury, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

## TONGUE, J.

Plaintiff appeals from a judgment in favor of defendants in an action in two counts: (1) for damages for fraud in the sale of stock in a corporation, and (2) for repayment of the purchase price of the stock, which allegedly was not registered with the Oregon Corporation Commissioner, in violation of the Oregon Securities Law, ORS Chapter 59. The case was tried before the court sitting without a jury. The trial court made general findings in favor of defendants on both counts, holding that ORS Chapter 59 was not applicable.

■ We have reviewed the testimony and the exhibits and conclude that the trial court could properly find from the conflicting testimony that plaintiff failed to establish all of the elements of common law fraud, as alleged in the first count of the complaint, with the necessary clear and convincing evidence. We do not, however, agree with the holding by the trial court that ORS Chapter 59 was not applicable in this case.

ORS 59.115 (1) and (2) provide that any person who offers or sells a security in violation of the Oregon Security Law (including ORS 59.055 requiring the registration of all nonexempt securities) is liable to the person buying the security from him, upon tender of the security, for the amount paid for the security, plus interest, attorney fees and costs.

ORS 59.035 provides exemptions from registration for, among other things:

> "(2) An isolated transaction not in the course of repeated and successive transactions in this state" and

> "(11) The initial sale of any securities of a new organization by preorganization subscription or by subscription after organization but *before the commencement* of any business activity, [upon satisfying certain stated conditions]." (Emphasis added)

ORS 59.275 provides that "the burden of proof of an exemption * * * shall be upon the party claiming the benefit of such exemption * * *."

In considering the application of the Oregon Security Law to the facts of this case it is necessary to bear in mind that we have previously held that this statute is to be "liberally construed to afford the greatest possible protection to the public." *Adamson v. Lang,* 236 Or 511, 516, 389 P2d 39 (1964); *Spears v. Lawrence Sec., Inc.,* 239 Or 583, 587, 399 P2d 348 (1965); *Gonia v. E. I. Hagen Co.,* 251 Or 1, 3, 443 P2d 634 (1968); and *Adams v. American Western Securities,* 265 Or 514, 524, 510 P2d 838 (1973). Because of the general finding by the trial court in favor of the defendants, however, the testimony offered by them must be accepted as true for the purposes of this ap-

peal and any conflicts in the testimony must be resolved in favor of the defendants.

*Summary of the facts.*

Defendant New-U Products, Inc., an Oregon corporation, was organized by defendant Saunders after his wife's successful experience with a weight-reducing "solution" and "wraps." He testified that he became interested when his wife couldn't get into a dress that she wanted to wear to a party, but was able to do so "after about two hours in these wraps." Defendant Saunders, who was engaged in the "investment business," testified that he then made an agreement with the inventor of the formula for the solution under which he was to have its "exclusive use."

On February 9, 1971, articles of incorporation for New-U Products, Inc., were filed with the Oregon Corporation Commissioner and a certificate of incorporation was issued. The articles of incorporation authorized the issuance of 50,000 shares of capital stock. The named incorporators were defendant Saunders and one Tom Reiss. The board of directors were listed as Reiss, Saunders and Saunders's wife. According to the minute book of the corporation, the first meeting of the "incorporators and subscribers" was held on February 15, and the first meeting of directors, consisting of the same three persons, was held on February 22. The first meeting of stockholders was held on March 15. According to Saunders, however, "there was no stock that was subscribed or issued" at that time.

Defendant Saunders also testified that all of the money that was put into the corporation at that time was put in by himself and that on February 5, 1971,

he opened a checking account for the corporation and deposited $1,000 in that account. He also testified at one point that the corporation started doing business on February 5, 1971, but "hadn't really; I was doing the business." At another point Saunders testified that it started business "as a corporation, in August."

It appears from the corporate checkbook, however, that between the first part of February and the end of August 1971, a total of 28 checks were issued, including checks for the purchase of "solutions" and "wraps" and also for photography, printing and advertising expenses, among other items. According to Saunders, however, all of the money in that account for payment of such checks was "my own"; these purchases were made by him personally; he operated the corporation as "his business," and invested several thousand dollars in the corporation prior to September 1971.

In "April or May" 1971, "solution" and "wraps," as well as "literature," were sold by Saunders "personally" to defendant Milton Sharp, the owner of Johnnie Johnson's Spa. Sharp then established a so-called "wrapping or figure salon" in a "distinct area" of his spa and started accepting customers for that salon on May 17, 1971. Defendant Sharp testified that on an "average day" prior to September 1, 1971, he would estimate that he had from seven to 12 customers for use of the "wrapping or figure salon."

"Sometime in August," according to defendant Sharp, he was called by Saunders, who said that "they were thinking of opening a salon in Lake Oswego" and inquired if Sharp would "come in with them on the business." Sharp testified that he said "yes" to the

idea of going in on a business, not necessarily with Saunders, but with a group to include defendants Saunders, Parker, Carey and himself. It appears that Saunders had some meetings or other contact with defendants Parker and Carey, as well as with defendant Sharp, before he had any contact with plaintiff Day.

Saunders testified that his first contact with plaintiff was on August 20, 1971, when, according to his diary, he had an appointment for a meeting with plaintiff and with defendant Carey.

Plaintiff testified, without contradiction, that he had previously become interested in investing in a reducing salon; that he had been referred to defendant Carey; that after calling Carey to make an appointment he met with Carey; that Saunders was also present at that meeting; that they told him that four of them (Saunders, Carey, Parker and Sharp) were "involved in a corporation that they had started" called "New-U Products, Incorporated," of which they were the officers and directors; and that there were then a series of informal meetings and conferences with the four defendants.

Because we have held, after a review of this record, that the trial court properly held that plaintiff failed to establish the elements of common law fraud with the necessary "clear and convincing evidence," it would serve no useful purpose to summarize plaintiff's testimony relating to the various representations made to him by the defendants. It appears without contradiction, however, that on September 9, 1971, he "put in" $20,000 and on September 28, 1971, "put in" another $5,000 and that as of September 9, 1971, none of the defendants had "put in" any money except de-

fendant Saunders, who testified that he had previously "put in" $27,000, and Parker, who had "put in" $5,000.

It also appears from the corporation minute book that a directors' meeting was held on August 20, 1971, with Saunders, Parker, Carey and Sharp present, to discuss, among other things, the subject of the reorganization of the corporation and the sale of 125,000 shares of unsubscribed stock to prospective buyers; that on August 30 a directors' meeting of the same four defendants was held to discuss advertising and marketing plans and a budget, as well as the marketing of "home kits"; and that a further directors' meeting was held on September 4.

Separate minutes of a "special pre-corporation" meeting on September 3, 1971, to discuss the distribution of 25,000 shares of stock to each of the four individuals and the establishment of a wholly-owned subsidiary corporation to operate reducing salons were also offered as evidence. Also, according to those minutes these same four persons were to be directors of New-U Products, Inc., and the total number of shares would be 106,072. As of that date, however, the authorized stock was 50,000 shares and there had been no application to increase the capital stock.

All of these meetings were held prior to a "special pre-corporation meeting of proposed board of directors" on September 8, 1971, to discuss a proposal by plaintiff to invest $25,000 in the corporation. None of those meetings were attended by plaintiff, according to the minutes of such meetings, except the meeting of September 8.

On September 28, 1971, a written agreement was signed by the plaintiff and by all four of the individual

defendants. That agreement provided, among other things, that New-U Products, Inc., was an Oregon corporation in good standing; that defendant Saunders warranted that he had sole control of all of its stock and assets; that the formal organization of the corporation had not been completed and stock certificates had not been issued; that the corporation was to be recapitalized to increase the number of shares of stock to 1,000,000 shares; that defendants Carey and Sharp would each receive 25,000 shares of stock upon execution of notes to the corporation for $5,000; that defendant Parker would receive 25,000 shares in return for $5,000 previously paid; that plaintiff would receive 25,000 shares in return for payment of $25,000; that defendant Saunders would receive 25,000 shares as fully paid, plus the promissory note of the corporation for $20,000 and guaranteed by the other parties; and that Saunders, Carey, Sharp, Parker and plaintiff would be the initial officers and directors of the corporation.

On that same date stock certificates were prepared in the name of plaintiff and defendants Saunders, Sharp, Carey and Parker for 25,000 shares each, all dated September 28, 1971, except for the certificate to Saunders, which was dated March 15, 1971. As of September 28, 1971, defendants Carey and Sharp had each signed promissory notes for $5,000, but had "put in" no cash. Saunders testified that Carey, Parker and Sharp had knowledge and experience that would be of value to the business, but that he had previously told plaintiff that there was "no way" for him to get "a piece of the business for less than $25,000," which was paid by plaintiff.

It was stipulated that none of this stock was regis-

tered with the Oregon Corporation Commissioner. The corporation later became insolvent and plaintiff wrote a notice to the corporation rescinding the sale and demanding repayment of the $25,000 paid by him for the stock.

*The sale of stock to plaintiff was not exempt as an "initial sale" by a "new organization" before the "commencement of any new business," nor was it exempt as an "isolated transaction."*

■ Defendants contend that the sale of stock to plaintiff was exempt from the provisions of the Oregon Securities Law by the provisions of ORS 59.035(11) as an "initial sale" by a "new organization * * * before the commencement of any business activity."

In a memorandum opinion the trial court stated that "[T]he matter of the application of Ch. 59, ORS concerning registration of securities is the only issue which gives me trouble," but that "I interpret Ch. 59 as not being applicable to the dealings between plaintiff * * * and the defendants * * *."

This difficulty by the trial court may have been the result of defendants' contention to the effect that plaintiff was "on the horns of a dilemma" in that: (1) if the sale of stock to plaintiff (including the "attempt" to make such a sale)[1] was an "initial sale" by a "new organization," then all stockholders, including plaintiff, purchased their stock at the same time and the sale was exempt under ORS 59.035 (11), but that (2) if the sale of stock to plaintiff did not qualify as an "initial sale," but was made after the corporation en-

---

[1] ORS 59.015 (11) defines a "sale" of securities for the purposes of the statute to include an "attempt or offer to sell" and "solicitation of an offer to purchase," among other things.

gaged in some "business activity," so as not to be exempt under ORS 59.035 (11), then it would follow that all of the four individual defendants owned stock in the corporation prior to the sale of stock to plaintiff, with the result that the sale to him was exempt under ORS 59.035 (2) as an "isolated transaction."

We do not agree. Even if it be considered that an "attempt" was made to sell stock in the corporation to plaintiff as early as August 20, 1971, the record is clear that the corporation was engaged in at least some "business activity" prior to that date. This is demonstrated by the checks drawn on the corporation bank account prior to that date for the purchase of supplies, including "solution" and "wraps"; for photography, printing, and advertising expenses; and for office rent, among other things. We must construe the term "any business activity" as used in ORS 59.035 (11) to mean what it says.

It follows that because of the sale, or attempted sale, of stock to plaintiff is not within the exemption provided by ORS 59.035 (11) for sales of stock by a "new organization" before "the commencement of any business," the sale of unregistered stock was in violation of the statute, unless it was exempt under ORS 59.035 (2) as "an isolated transaction not in the course of repeated and successive transactions."

The record is also clear that at or about the time that the sale of stock was made (or attempted) to plaintiff, sales of stock were also made to defendants Carey and Sharp who became stockholders pursuant to the terms of the written agreement dated September 28, 1971, and to whom stock certificates were issued bearing that date.

■ In *Tarsia v. Nick's Laundry Co.*, 239 Or 562, 565-66, 399 P2d 28 (1965), we held that the sale of stock to one of at least three purchasers at or about the same time does not qualify under the exemption provided by ORS 59.035 (2) for "an isolated transaction not in the course of repeated or successive transactions." To the same effect, see *Thorson v. Richmond,* 267 Or 586, 518 P2d 642 (1974). The fact that these two defendants were also purchasers does not relieve them from liability for participation in the sale of securities to plaintiff. See ORS 59.115 and *Brown v. Cole,* 155 Tex 624, 291 SW2d 704, 708 (1956).

ORS 59.115 (3) provides that:

"(3) Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with him."

The trial court, in its memorandum opinion, stated that:

"If I have misinterpreted the law as to the applicability of the registration provisions of ORS Ch. 59, then plaintiff is entitled to recover as against all defendants, except Richard Carey (by reason of bankruptcy), the sum of $25,000 plus interest at the rate of six per cent per annum upon $20,000 from September 9, 1971 until paid and upon $5,000 from September 29, 1971 until paid."

The individual defendants, although separately represented, do not question the correctness of such a result.

There was ample evidence to support the finding by the trial court to the effect that if the statute was applicable to this transaction, each of the individual defendants, except Richard Carey (by reason of bankruptcy) was individually liable to plaintiff by reason of the provisions of ORS 59.115 (3).

For all of these reasons the judgment of the trial court is reversed and this case is remanded with instructions that judgment be entered in favor of plaintiff and against defendants Saunders, Sharp, Parker and New-U Products, Inc., including interest, attorney fees and costs, all as provided by ORS 59.115.[2].

Reversed and remanded.

---

[2] In view of the basis upon which this case is decided it is not necessary to consider or decide the question whether or not defendants could claim the benefit of the exemptions provided by ORS 59.035 under their answers, which were in the form of general denials, including a denial that the securities were required to be registered, as alleged in the complaint, and in the absence of pleading such exemptions as affirmative defenses.