**Stacey Lamont EDWARDS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–81–459.**

Court of Criminal Appeals of Oklahoma.

May 19, 1983.

Alfred K. Hambrick, Midwest City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant, Stacey Lamont Edwards, was convicted in Oklahoma County District Court, Case No. CRF–80–3642, of Kidnapping, After Former Conviction of Two or More Felonies, was sentenced to one-hundred-seventy-five (175) years' imprisonment, and he appeals.

Shortly before 11:00 A.M. on September 10, 1980, a man, positively identified at trial as the appellant, entered the passenger side of an automobile belonging to Ms. Donna Apple, just as she sat down in the driver's seat. Ms. Apple testified that she had purchased a pair of shoes in a shopping mall located at S.E. 44th and Bryant Avenue in Oklahoma City, when the appellant, whom she remembered seeing about a half an hour earlier while both were purchasing gasoline at a service station located nearby, stuck a long bladed knife to her side, and told her that he needed a ride. The witness stated that she told the appellant that he could take her car; however, Edwards declined to do so saying, "I'm going to get a piece of ass first, just start driving and don't do anything crazy and [you] won't get hurt."

The victim related that the appellant forced her to drive her car, but she purposefully avoided following his directions whenever possible. When Ms. Apple saw a garbage truck with workers surrounding it, she pulled up next to it, slammed on her brakes and began screaming "rape" as loud as she could. Edwards, who had caused the car's motor to die when he pressed on the accelerator, exited the vehicle and began running in a westerly direction.

The victim's impassioned pleas for assistance were answered by two of the garbage collectors, who accompanied her in her car and chased after the fleeing assailant. As Edwards was about to enter his car, that had been left parked in the shopping mall about a half a mile away, he was caught by the civic minded sanitation employees, Jackie Green and Cory Don Riley, who subdued him and held him until law enforcement officers could arrive.

The arresting officers testified that Edwards produced a knife from his right hip pocket upon request, and was immediately advised of his *Miranda* rights.

Detective Jim Strong of the Del City Police Department testified that the appellant was informed of his *Miranda* rights, which he stated that he understood, and that Edwards made a voluntary admission of the crime in question without promises or coercion, after he had signed a waiver of rights form.

■ In his first assignment of error, the appellant alleges that the trial court erred in failing to grant his motion for a mistrial which was entered at the beginning of the second day of the trial, after several jurors had admitted that overnight they had either seen a newspaper article regarding the case or had overheard a television report on the trial. We find the appellant's reliance upon *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), to be misplaced, as the facts therein are vastly different from those presently presented. Whereas in *Rideau,* the prejudice of the jurors from the pretrial publicity was readily apparent, a review of the record now before us fails to disclose that any of the jurors ever received any communication that could be categorized as an extrajudicial "trial," such as the one condemned by the Supreme Court. We are of the opinion that *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), is controlling in the instant case. Therein, the Supreme Court pointed out that "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial 'indifferent' jurors," and held:

It is not required however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected

to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.* (Citations omitted; emphasis ours).

The trial court's examination of the jurors, in the instant case, and his determination that they were not prejudiced against the appellant by any information they may have received outside the courtroom,[1] was in accordance with the rule laid down in *Irvin,* supra. Accordingly, this assignment of error is without merit.

█ In his second and final assignment of error, the appellant complains that his punishment is excessive. This Court has repeatedly stated that the question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case, and we do not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence was so excessive

as to shock the conscience of the Court. See for instance, *Edwards v. State,* 645 P.2d 528 (Okl.Cr.1982), and cases cited therein. In light of the overwhelming evidence of the appellant's guilt, his previous convictions, and the fact that the sentence imposed was within the statutory limit, we cannot conscientiously say that the sentence imposed shocks the conscience of this Court. *Edwards,* supra.

Accordingly, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.

---

1. In response to the defense attorney's argument on his mistrial, the record reflects the following by the trial court in an in-camera hearing:

THE COURT: If this were true, counsel, we would never, never, never, in a metropolitan area in these United States be able to try this kind of a case. These people from their appearance and from their demeanor and their responses to the voir dire questions that I asked them yesterday wherein I put a strong admonition on them that they must exercise their highest degree of integrity and courage, had them swear to it, hold up their hand, had them swear that they would be able to put things in the wastepaper basket of their mind or I referred to it also as file thirteen, disregarding, in other words. They all swore they would do that. I have to assume that this jury is a serious-minded jury, that each one of them are strong of character and have indicated affirmatively without any hesitation. There has not been any single one of these jurors who hesitated to affirmatively express their ability to exercise that degree of courage necessary to decide the case based on the evidence and law received in open court and to disregard not only what they saw or heard or read, but also disregard anything that might be published in the future. Motion for Mistrial, will, therefore, be overruled, exceptions allowed. (Tr. 118 & 119).