Argued and submitted May 23, 1986, affirmed March 25, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# RICHARD C. CROOKS,
*Appellant.*

(38053; CA A35935)

734 P2d 374

David Allen Filer, Redmond, argued the cause for appellant. With him on the brief was Bryant, Fitch & Filer, Redmond.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem..

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for selling an unregistered security in violation of ORS 59.055. He asserts that the security which he sold was exempt from registration requirements under ORS 59.025 and that the transaction was exempt under ORS 59.035. In addition, he argues that the court unconstitutionally placed the burden on him to prove the availability of the exemptions and objects to an award of restitution to the purchasers of the security. We affirm.

Defendant was engaged in the business of buying and selling real estate security instruments in the Bend area. In some instances he would sell percentage participations in the notes or other security instruments. He was familiar with state security laws and testified that shortly before his arrest he had been working with the Oregon Corporation Commissioner to develop new administrative rules governing sales of percentage participations in trust deeds.

Russell and Mary Emery, the purchasers of the unregistered security involved, were frequent customers of defendant. In April, 1982, he informed the Emerys that a participation in a real estate note and an accompanying mortgage, known as the Beaver contract, would be available in the near future. The amount of the note was to be $60,000. The Emerys agreed to buy a one-third interest in the investment and, in April, 1982, gave defendant $20,000 for the purchase. Although defendant had previously applied for registration of the Beaver contract, registration was not actually granted until June 4, 1982.

Due to commitments defendant had made to other customers, the Emerys' share in the note was limited to $5,000 when the transaction was actually consumated. Defendant refunded $1,000 in cash to the Emerys and gave them a $14,000 promissory note from his company. Defendant's company's obligation to repay the Emerys was subsequently discharged in bankruptcy.

ORS 59.055 provides:

"It is unlawful for any person to offer or sell any security in this state, unless:

"* * * * *

"(2)   The security is exempt under ORS 59.025 or the sale is exempt under ORS 59.035."

Defendant argues that the "participation" interest which he offered and eventually sold to the Emerys was exempt as "commercial paper" under ORS 59.025(7). That exemption includes:

"Commercial paper issued, given or acquired in a bona fide way in the ordinary course of legitimate business, trade or commerce, where the commercial paper is not made the subject of a public offering."

The securities law does not define the term "commercial paper," and our research has not revealed any occasion when a state appellate court has interpreted the term for security regulation purposes.

Defendant urges that the definition of commercial paper for purposes of securities regulation should be the same as in Article 3 of the Uniform Commercial Code, codified at ORS chapter 73. Although chapter 73 does not specifically define commercial paper, defendant argues that it is clear from the statutory structure that "commercial paper" and "negotiable instruments" mean the same thing. *See* ORS 73.1040. However, the legislative history of the securities law indicates that the legislature did not intend to draw the commercial paper exemption so broadly as to include all negotiable instruments as defined by ORS 73.1040. The legislature revised the securities law in 1967 after the adoption of the UCC.[1] Before 1967, the securities law provided an exemption for "negotiable promissory notes or commercial paper." Or Laws 1939, ch 397, § 3(f). The deletion of the term "negotiable promissory notes" in the amended statute is not consistent with defendant's theory that the exemption is intended to encompass all negotiable instruments as defined in the UCC. On the contrary, it suggests that "commercial paper" has a distinct meaning for security regulation purposes.[2]

---

[1] *See* Basye, "A Glimpse of Oregon's Blue Sky Legislation: The Revision of 1967," 47 Or L Rev 403 (1968); 1966 Or State Bar Com Rep 24 (1966).

[2] At least two other state appellate courts have specifically rejected the notion that the meaning of "commercial paper" in the UCC should be applied in securities regulation situations. *People v. Dempster,* 396 Mich 700, 242 NW2d 381 (1976); *State v. Sheets,* 94 NM 356, 610 P2d 760 (1980).

The Commissioner is said to limit the commercial paper exemption to "only high grade negotiable paper of the type rated in the investor services such as Fitch, Moody, Standard and Poor." McGaughey, *Oregon Securities Handbook* 26 (1982). That interpretation parallels an analogous exemption from federal securities registration requirements under the Securities Act of 1933.[3] The United States Supreme Court recently defined "commercial paper" in a generic sense as referring to "unsecured, short-term promissory notes issued by commercial entities" with maturities usually of nine months or less. *Securities Industry Assn. v. Board of Governors,* 468 US 137, 104 S Ct 2979, 82 L Ed 2d 107 (1984).

■ ■ Exemptions from registration requirements under state securities laws should be construed to provide the greatest possible protection for the public. *Day v. Saunders,* 270 Or 432, 528 P2d 513 (1974). The narrow scope of the commercial paper exemption used by the Commissioner best complies with the securities law's goal of protecting private investors. In the absence of an explicit definition, we hold that the term commercial paper in the securities law includes only unsecured short term negotiable debt instruments issued by

---

[3] Although that exemption does not specifically employ the term "commercial paper," it is commonly known as the "commercial paper exemption." It includes:

> "Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 USC § 77c(a)(3) (1982).

This provision has been construed to apply only to high grade, short term promissory notes and other negotiable paper issued and held by commercial entities. *S.E.C. v. American Bd. of Trade, Inc.,* 751 F2d 529 (2nd Cir 1984); *Zabriskie v. Lewis,* 507 F2d 546 (10th Cir 1974); *Securities and Exchange Commission v. Coffey,* 493 F2d 1304 (6th Cir 1974), *cert den* 420 US 908 (1975). The purpose of the exemption is to *minimize securities law regulation of those portions of the commercial paper market* which are considered to be self-regulating through comprehensive credit investigations conducted by major investment reporting services such as Dunn and Bradstreet, Inc. and Moody's. *See Comment,* "The Commercial Paper Market and the Securities Acts," 39 U Chi L Rev 362, 371-73 (1972).

The 1967 revision of the Oregon Securities Law incorporated relevant provisions and policies of the Uniform Securities Act. *See* Basye, *supra.* Like ORS 59.025(7), § 402(a)(10) of the Uniform Securities Act exempts "commercial paper" from security regulation reporting requirements and is based on § 77(c)(3) of the federal Securities Act of 1933. *Comment* accompanying Uniform Securities Act (1958), § 402, *reprinted in Master Edition of Uniform Laws Annotated* (1985). There is therefore a connection between federal securities law and the commercial paper exemption under Oregon Securities Law.

commercial entities. The unregistered security sold by defendant clearly falls outside that definition.

■       Defendant next argues that the sale to the Emerys was exempt under *former* ORS 59.035(10), which allows a broker to "offer" a security for sale before its registration.[4] The trial court found, however, that defendant not only offered the security but also accepted payment from the Emerys before registration. Defendant accepted the payment and retained it pursuant to an oral agreement that the Emerys had purchased a participation effective as soon as he had acquired the mortgage. We conclude that the exemption does not apply under the trial court's actual findings.

■       Defendant also argues that ORS 59.275 is invalid insofar as it provides that "the burden of proof of an exemption or classification shall be upon the party claiming the benefit of such exemption or classification." Defendant urges that this provision, included within a statute bearing criminal penalties, unconstitutionally requires him to bear the burden of proving innocence. We disagree.

In *State v. Burrow,* 293 Or 691, 653 P2d 226 (1982), the Supreme Court addressed the issue of whether a criminal defendant could be required constitutionally to bear the burden of proving an affirmative defense to the then existing felony murder statute, ORS 163.115. The court decided that, unless an affirmative defense has the effect of transferring the burden of disproving an element of the offense to the defendant, requiring proof of the defense by the defendant is permitted. In view of the plain language of ORS 59.275,[5] the existence of an exemption is not an element of the offense of

---

[4] The provision exempted:

"An offer of a security for which registration statements have been filed under both the Oregon Securities Law and the Securities Act of 1933, as amended, if no stop or refusal order or order under ORS 59.105 is in effect and no public proceeding or examination looking toward such an order is pending. Such offer may not be accepted until the securities have been registered as provided in the Oregon Securities Law."

[5] ORS 59.275 provides:

"It is not necessary to negative any of the exemptions or classifications provided in the Oregon Securities Law in a complaint, action, information, indictment or other writ or proceeding laid or brought under the Oregon Securities Law; and the burden of proof of an exemption or classification shall be upon the party claiming the benefit of such exemption or classification."

selling an unregistered security. Rather, it is equivalent to an affirmative defense. Whether a security falls within the class of exempt securities is a fact peculiarly within the personal knowledge of the seller. It is not unreasonable to require the seller to present proof of the exemption. The court correctly rejected defendant's contentions that the security or the transaction was exempt.

■   The court ordered defendant to pay $14,000 as restitution to the Emerys. He argues in two assignments of error that there was no causal relationship between his criminal activity and the buyers' loss of money and that the court erred in not making findings that he was or would be able to pay the restitution ordered. ORS 137.106(1) allows an award of restitution to victims of criminal acts. In *State v. Dillon,* 292 Or 172, 637 P2d 602 (1981), the Supreme Court established three prerequisites for a restitution award: (1) criminal activity, (2) pecuniary damages and (3) a causal relationship between the two. The existence of the first prerequisite, criminal activity, has already been established.

ORS 137.103(2) sets out the permissible scope of restitution for pecuniary damages:

> "[A]ll special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses * * *."

ORS 59.115 specifically provides that a person who sells a security in violation of the Oregon Securities Act is liable to the purchaser for the consideration paid for the security. The primary basis for the seller's liability is fraud. *Karsun v. Kelley,* 258 Or 155, 167, 482 P2d 533 (1971).

Defendant's sale of an unregistered security resulted in the victims losing $14,000. The Emerys' subsequent acceptance of a note in the place of the originally offered security did not constitute a separate transaction for purposes of restitution. If the "loss" results from the criminal activity "in a 'but for' sense," then an obligation of restitution may be imposed. *State v. Doty,* 60 Or App 297, 300, 653 P2d 276 (1982). Defendant's subsequent promise to repay the Emerys, as evidenced by the note of his corporation, flowed from the

obligation he incurred in the underlying transaction. Although the bankruptcy of defendant's company may have been the immediate cause of the Emerys' loss, the loss would not have occurred but for the sale of the unregistered security.

Defendant additionally contends that the court erred in not making findings regarding his ability to pay restitution. He did not raise that issue at the sentencing hearing, and we decline to address it. *State v. Lake,* 49 Or App 505, 619 P2d 1332 (1980), *rev den* 290 Or 519 (1981); *State v. Keys,* 41 Or App 379, 597 P2d 1266 (1979).

Affirmed.