(801 P.2d 68)

No. 64,500

STATE OF KANSAS, *Appellee,* v. GARY J. KERSHNER, *Appellant.*

Opinion filed November 21, 1990.

*Donald R. Hoffman,* of Tilton & Hoffman, of Topeka, for appellant.

*Roger N. Walter,* general counsel, and *Caroline M. Ong,* associate general counsel, of Office of the Kansas Securities Commissioner, of Topeka, for appellee.

Before ELLIOTT, P.J., REES, J., and DONALD L. WHITE, District Judge, assigned.

ELLIOTT, J.: Defendant Gary Kershner appeals from two convictions of engaging in business as a broker-dealer without being registered (K.S.A. 17-1254[a]) and two convictions of selling or offering for sale unregistered securities (K.S.A. 17-1255).

We affirm.

Kershner ran the business activities of Amhawk, Inc., a Kansas

corporation which sold seasonings and distributorships. Kershner was involved in the sale of Amhawk securities. Amhawk incurred rather heavy indebtedness, so Kershner decided to organize a new corporation called Country Kettle in order to have a clean corporation from which to apply for a Small Business Administration loan. Amhawk was to be purchased by Country Kettle and its debt was to be satisfied from the SBA loan proceeds. Defendant was involved with the sale of Country Kettle stock.

Kershner was charged with some 14 counts of violating the Kansas Securities Act, K.S.A. 17-1252 *et seq.*, plus one count of making a false writing and one count of perjury. As noted above, he was convicted of four counts.

We note initially that the Kansas Securities Act is patterned on the Uniform Securities Act, which, in turn, is patterned on the Federal Securities Act of 1933. Accordingly, the Uniform Act should be construed in such a way as to make its application uniform in those jurisdictions adopting it. In other words, the Kansas Act should be applied by giving particular attention to federal decisions and decisions of sister states adopting the Uniform Act. See *State ex rel. Owens v. Colby*, 231 Kan. 498, 501, 646 P.2d 1071 (1982).

*Did the trial court err in ruling K.S.A. 17-1272 does not unconstitutionally shift the burden of proof?*

Kershner argues K.S.A. 17-1272 is unconstitutional because it shifts the burden to him to show he did not intend to violate the Kansas Securities Act.

Kershner was convicted of violations of K.S.A. 17-1254 and -1255. Those statutes render it unlawful to engage in business as a broker-dealer without being registered, except for exempt transactions, and to offer or sell unregistered securities, except for exempt securities.

K.S.A. 17-1262 provides some 18 types of transactions exempted from the provisions of K.S.A. 17-1254 and 17-1255. K.S.A. 17-1272 provides that the State need not negate in an indictment any of the exemptions. Rather, the burden of proof of any exemption "shall be upon the party claiming the benefit of such exemptions."

Defendant's argument is, essentially, that the statute impermissibly shifts to him the burden of proof on intent, which he

contends is an essential element of the crimes charged. We disagree.

The trial court held that the exemptions were affirmative defenses to the crimes charged and further interpreted 17-1272 as merely creating a burden of production. The trial court ruled that once defendant produced some evidence of the existence of an exemption, the ultimate burden of persuasion was on the State to show beyond a reasonable doubt that the exemption did not apply.

If proof of the existence or nonexistence of an exemption from criminal liability under K.S.A. 17-1254 or -1255 were an essential element of the offenses, due process would require the State to bear the burden on those exemptions. See *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). On the other hand, a true affirmative defense does not serve to disprove an essential element of the crime, but merely consists of facts which might exonerate a defendant. See *Patterson v. New York*, 432 U.S. 197, 206-07, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977).

The essential elements in K.S.A. 17-1254, as applied to defendant, required a showing that he (1) engaged in business in Kansas as a broker-dealer and (2) was not so registered. The elements in K.S.A. 17-1255, as applied to defendant, required the State to show Kershner (1) offered or sold a security in Kansas and (2) that security was not registered.

Statutes almost identical to ours are found in numerous other states. Those states having decided the question are virtually unanimous in ruling that the exemptions are affirmative defenses, and that proof of the existence or nonexistence of the exemptions are not essential elements of the crimes charged and do not merely negate an essential element. *See, e.g., State v. Crooks*, 84 Or. App. 440, 734 P.2d 374 (1987).

Where an affirmative defense does not negate an essential element of the crime, which the State has the burden of proving beyond a reasonable doubt, due process is not violated by requiring a defendant to carry the full burden of proving that defense by a preponderance of the evidence. *Patterson*, 432 U.S. at 207. Further, a statute requiring defendant to bear only the burden of production on an affirmative defense (as the trial court ruled in the present case) has been recognized as constitutional

by all jurisdictions ruling on the question. See McCormick on Evidence § 347, p. 991 (3d ed. 1984).

A review of case law from sister states confirms that challenges to the constitutionality of statutes essentially identical to 17-1272 have been uniformly rejected when the statutes have been interpreted to require only a burden of production or going forward on the existence of an exemption by the defendant. See, *e.g.*, *People v. Dempster*, 396 Mich. 700, 242 N.W.2d 381 (1976); *State v. Goetz*, 312 N.W.2d 1 (N.D. 1981), *cert. denied* 455 U.S. 924 (1982).

K.S.A. 17-1272 does not shift the State's burden of proof required for a conviction; the burden remains with the State to prove beyond a reasonable doubt all elements of the crimes charged.

*Did the trial court err in finding proof of specific intent was not required to sustain the convictions?*

Defendant argues that the crimes with which he was charged were specific intent crimes but, due to the trial court's erroneous interpretation of "willful" under K.S.A. 17-1267(a), the State did not sustain its burden of proof.

While the Kansas Securities Act does not define "willful," our Supreme Court has. No specific intent is required where one violates the Securities Act "except the intent to do the act denounced by the statute." *State v. Hodge*, 204 Kan. 98, 107, 460 P.2d 596 (1969).

"Willfully" under 17-1267 means the defendant acted intentionally in the sense that he was aware of what he was doing. *State v. Puckett*, 6 Kan. App. 2d 688, 699, 634 P.2d 144 (1981), *aff'd* 230 Kan. 596 (1982). Sister states have also found that specific intent is not required to sustain a conviction under similar statutes. See, *e.g.*, *State v. Fries*, 214 Neb. 874, 337 N.W.2d 398 (1983); *State v. Sheets*, 94 N.M. 356, 610 P.2d 760 (1980).

In the present case, the trial court was careful to explain to the jury that it must find the crimes charged were committed willfully. Instruction number 25 stated: "The term, 'willfully,' as used in these instructions means the person acted intentionally in the sense he was aware of what he was doing."

The trial court did not err.

*Do the offenses for which defendant was convicted constitute crimes pursuant to K.S.A. 21-3102(1)?*

Defendant argues that the offenses described in K.S.A. 17-1254 and -1255 are not crimes. This issue seems to be raised for the first time on appeal. Defendant cannot raise points here which were not presented to the trial court. *State v. Holley,* 238 Kan. 501, 508, 712 P.2d 1214 (1986).

Even if we were to consider the issue, however, there is no merit to defendant's argument.

K.S.A. 21-3102(1) provides:

"No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state, but where a crime is denounced by any statute of the state, but not defined, the definition of such crime at common law shall be applied."

Defendant argues that since 17-1267(a) does not expressly refer to a violation of the Securities Act as a "crime," it cannot *be* a crime."

A crime is an act defined by law for which, on conviction, a sentence is authorized. K.S.A. 21-3105. K.S.A. 17-1267(a) authorizes, on conviction, imprisonment up to three years and/or a fine of up to $5,000 and speaks of "prosecution for any crime under this act."

Further, 17-1254 and -1255 specify acts as "unlawful." An act made unlawful under the Securities Act is, without question, "made criminal in . . . [a] statute of this state." K.S.A. 21-3102(1).

The offenses for which defendant was convicted were crimes under Kansas law.

*Is a violation of the Kansas Securities Act a felony or a misdemeanor?*

According to defendant, since 17-1267 does not expressly state that offenses under the Securities Act are felonies, they must be misdemeanors.

Kansas crimes are classified as felonies, misdemeanors, and traffic infractions. A felony is punishable by imprisonment in a state penal institution. K.S.A. 21-3105.

While the Securities Act provides for up to three years of imprisonment, it does not specify the incarceration to 10 be in a state penal institution. Clearly, if the crimes defined in 17-1267

are not felonies, they must be misdemeanors. See K.S.A. 21-3105(3).

But K.S.A. 21-4502(1), which sets the terms of confinement for misdemeanors, does not provide for any confinement exceeding one year. It is, therefore, clear to us that the legislature did not intend to make violations under 17-1267 misdemeanors. Further, our Supreme Court has accepted prosecutions under the Securities Act as felonies. See *State v. Hodge,* 204 Kan. 98, Syl. ¶ 10, 460 P.2d 596 (1969).

A sister state has construed a similar statute. *Carr v. State,* 359 P.2d 606 (Okla. Crim. 1961). There, as here, the defendant argued that since the statute was silent as to the place of imprisonment, the crime must be a misdemeanor. 359 P.2d at 608. And there, the court ruled that since authorized confinement could exceed a year, logic dictated the crime to be a felony. 359 P.2d, at 609.

The trial court properly ruled the crimes to be felonies.

*Was there sufficient evidence to support the jury's finding that a commission or remuneration was given for soliciting the purchasers of stock?*

Finally, defendant argues there is insufficient evidence to support a finding that the securities sold were not exempt under 17-1262(m), which provides a transactional exemption for an offer or sale of a Kansas security when no commission or other remuneration is paid or given for soliciting the purchaser.

Defendant argues there is no evidence that any commission was ever actually paid or given for any solicitation.

On this issue, we view the evidence in a light most favorable to the prosecution in determining whether a rational factfinder could have found defendant guilty beyond a reasonable doubt. *State v. White,* 246 Kan. 28, 37-38, 785 P.2d 950 (1990).

This issue revolves around Augie Meier, Jr. Meier testified that defendant told him that if he were to bring in investors for Country Kettle, he would receive approximately one share of defendant's personal stock for every share sold. Subsequent to that conversation, Meier said he sent in potential investors, including Bruce and Russell Taylor.

The Taylors testified that after solicitation by Meier, they each purchased 21,000 shares of Country Kettle stock from defendant.

Defendant's convictions are based on the 12 sales to the Taylors. Russell Taylor also testified that at some point, Country Kettle and Ace Flying (or Flying Ace) merged to form Aunt Myra's, Inc. When that occurred, shares in Country Kettle were converted to shares in Aunt Myra's. The State presented evidence of a stock certificate to Meier of 200,000 shares of Aunt Myra's stock.

Meier testified with respect to the stock certificates that:

"Because when the stock changed from Country Kettle to Aunt Myra's, that my understanding was it went up in value when it was supposed to go into the shell corporation and—and that that made that go up *as well as some of the people that I brought into the corporation and was part of that.*" (Emphasis added.)

Defendant objected to the admission of the stock certificate on the basis that Aunt Myra's had nothing to do with the present case. The prosecution responded by stating the stock certificate in Aunt Myra's "related to commission paid to this witness [Meier] in the form of stock."

Defendant responded: "His [Meier's] testimony was that he was to get it in Country Kettle stock"—as opposed to Aunt Myra's stock.

Viewing the evidence in a light most favorable to the prosecution, as we must, there was sufficient evidence from which a rational factfinder could have found beyond a reasonable doubt that defendant gave and Meier received stock as a commission for the solicitation of the purchasers of the unregistered stock which Kershner sold.

The convictions are affirmed.