**Tim ARMSTRONG, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F-88-503.**

Court of Criminal Appeals of Oklahoma.

March 18, 1991.

Rehearing Denied June 26, 1991.

As Corrected July 16, 1991.

---

David J. Batton, Norman, for appellant.

Robert H. Henry, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Tim Armstrong, Appellant, was tried by jury for the crimes of Conspiracy to violate the Oklahoma Securities Act (21 O.S.1981, § 421) (one count), Selling an Unregistered Security (71 O.S.1981, § 301) (five counts), Fraud in Connection with the Offer and Sale of a Security (71 O.S.1981, § 301) (five counts), and Acting as an Unregistered Investment Advisor, Agent or Broker/dealer (71 O.S.1981, §§ 101, 201) (two counts) in Pottawatomie County District Court, Case No. CRF–86–407. The jury returned a verdict of guilty and in accord with the jury verdict the trial court imposed punishment of five (5) years imprisonment and a fine of five thousand dollars ($5,000.00) for Conspiracy, and three (3) years imprisonment and a fine of five thousand dollars ($5,000) for each of the remaining twelve counts. Each sentence is to be served consecutively. The appellant raises seven (7) propositions of error challenging the jury instructions, the admissibility of evidence, the constitutionality of the securities statutes, prosecutorial misconduct, and the unreasonableness of the sentence. We find no error warranting modification or reversal and AFFIRM.

Tim Armstrong, the appellant, worked as an investment adviser to Jane Kolbash and Anna Hawk. On his advice, the women invested or bought stock in several companies. Neither the appellant nor the securities he purported to sell were registered with the State as required by the Oklahoma Securities Act.

Jane Kolbash met the appellant through Ann Miller whom she hired as a hospice

nurse to help care for her husband who was dying of lung cancer. Over the course of the illness the two women became friends. When her husband died, Mrs. Kolbash received payment of $75,000.00 on his life insurance policy and put the money in a certificate of deposit. Kolbash had never handled financial matters, and Miller suggested that she should be concerned about her financial future and talk with Bob Bowen. Miller and Bowen then recommended that Kolbash meet with the appellant as a financial advisor. Kolbash met with the appellant and over a period of time came to trust him and consider him a friend.

On the appellant's advice, Kolbash made four separate investments which he told her were absolutely without risk. She went with him and Bowen to American National Bank in Shawnee and pledged her CD against a loan of $10,000.00 for investment in Oklahoma Native Stone. Kolbash received the assignment of a mortgage and note, the appellant and Bowen received the proceeds of the loan. Kolbash understood she was to receive one-third of the profits from the investment, and the appellant also gave her a letter promising to pay her five percent (5%) of his share of the profits. Kolbash went to the bank a second time on the appellant's advice and pledged her CD against a loan in the amount of $15,000.00 for another investment. The appellant and Bowen received the proceeds; Kolbash received a contract for deed which was to generate a monthly income of $250.00.

Kolbash returned to the bank a third time, again on the appellant's advice, and pledged her CD against a loan in the amount of $17,000.00 to invest in a new long distance phone company, Phon–Et. Bowen and the appellant got the proceeds; Kolbash was to receive the accounts payable of the company, which the appellant told her were valued at $70,000.00. The appellant, Bowen and Kolbash also participated in a "three-way split" and each received $400.00 of the loan proceeds.

Kolbash's final investment was in the amount of $32,000.00 in Wetumka Materials, which the appellant told her produced perlite. The appellant promised her that she would have the amount of her investment back in six (6) months. No stock in Wetumka Materials was ever issued to Kolbash. None of these investments returned a profit, and eventually Kolbash lost her CD.

Anna Hawk met the appellant through similar circumstances. She was recently divorced when she talked with Miller about volunteering in a hospice program Miller was trying to start in Shawnee. Hawk informed Miller she had received a settlement through the divorce in the amount of $84,000.00; however, the case was on appeal and Hawk was not in a position to spend the money. Several months later, after the settlement was final Miller suggested to Hawk that she talk with Bowen. Bowen and Miller met with Hawk and suggested that she meet with the appellant. Over time he brought Hawk into his confidence. He told her she should think of her children's future. He assured her there was a lot of money to be made through private investments, and that her money would be completely secure.

Relying on this advice Hawk wrote the appellant eight separate checks for a total amount of $70,000.00 made payable to Bob Bowen for investment in a native building stone project. Hawk received a promissory note; an assignment of a 160–acre tract of land, which belonged to Bowen and which the appellant told her was valued at $240,-000; a note and allegedly a five percent interest in Wetumka Materials. No stock was ever issued to Hawk. Hawk later investigated the land records at the county clerk's office and discovered Bowen owned only an undivided seventeen and a half (17½) acres.

■ At trial the appellant made no objection to the jury instructions, but now claims that fifteen (15) of the instructions are improper. The appellant concedes his failure to object at trial has waived review by this court of all but fundamental error, that error which causes a miscarriage of justice. *See Ashinsky v. State*, 780 P.2d 201 (Okl.Cr.1989); *Price v. State*, 782 P.2d 143 (Okl.Cr.1989); *Quilliams v. State*, 779

P.2d 990 (Okl.Cr.1989). Appellant first objects to Instruction 15 in which the trial court summarized in detail the crimes with which the appellant was charged in accord with the Oklahoma Uniform Jury Instructions, OUJI–Cr. 902. He argues that the instruction left nothing for the jury to decide. As the first sentence states that the following facts are alleged, and the last sentence of this instruction plainly states the defendant has entered a plea of not guilty to the charges, we are not persuaded by the appellant's argument.

■ Appellant also objects to Instruction 36 which informed the jury that the defendant bears the burden of establishing that the transactions are exempt from the requirements of the Oklahoma Securities Act. For reasons which we fully discuss below in the sixth proposition of error, we find this instruction to be a correct statement of the law. Appellant claims Instructions 22 to 32, and 34 which define a "security", "aiding and abetting", "agent, dealer and investment advisor", "material omission" and "willfully" are misstatements of the law. They are not. Appellant really is objecting to the wide cast of the Securities Act net, a futile argument.

Appellant directs our attention to a supplemental transcript to argue an instruction on circumstantial evidence was warranted. We ruled on April 5, 1990, that the supplemental transcript is not part of the record before us. Therefore we will not review the supplemental transcript for fundamental error. As his final argument regarding instructions the appellant states that statements of his "co-defendant" were admitted and no limiting instruction was given. There is no fundamental error here, for the appellant was tried alone and had no co-defendant.

■ In his second proposition of error the appellant argues that the trial court has the duty to instruct on defenses raised by the evidence and that the court should have instructed the jury that the defendant was an "issuer" and exempt from the registration requirements of the Oklahoma Securities Act. The appellant cites no authority to support his claim he was an issuer

and we find the evidence does not support this position.

■ Appellant also objects to the fact that the trial judge did not instruct the jury regarding the many exemptions to the definition of broker/dealer, agent and investment advisor set forth in 71 O.S.1981, § 2. None of the exemptions which the appellant urges should have been instructed were supported by the evidence. The trial court instructed the jury on the only defense which was supported by the evidence. Instruction 35 explained:

> ... (U)nder Oklahoma law a transaction is exempt from registration requirements if it is: any transaction in a bond or other evidence of indebtedness secured by a real or chattel mortgage or deed of trust, or by an agreement for the sale of real estate or chattels, if the entire mortgage, deed of trust, or agreement, together with all the bonds or other evidences of indebtedness secured thereby, is offered and sold as a unit.

O.R. 159.

■ Appellant next challenges admission of hearsay statements made by his co-conspirators. He argues that the conspiracy was not proved prior to the admission of the hearsay statements and that the independent evidence of the conspiracy was not presented prior to the hearsay statements. Under the Oklahoma Evidence Code, a statement which is offered against a party and made by his co-conspirator during the furtherance of a conspiracy is admissible and is not hearsay. 12 O.S. 1981, § 2801. However, prior to admission of the statement, the trial court must find that the conspiracy has been proven by a preponderance of the evidence. *Laske v. State*, 694 P.2d 536 (Okl.Cr.1985) (overruled in part on other grounds). While the statements themselves may be considered as evidence of the conspiracy, the independent evidence of the conspiracy must be presented first. *Harjo v. State*, 797 P.2d 338 (Okl.Cr.1990).

This Court imposes this order of proof to alleviate the danger that conditionally admitted hearsay, combined with other evi-

dence subsequently admitted, will blend in the minds of the jury so that the distinction between hearsay and non-hearsay is lost. *Harjo,* 797 P.2d at 342. The danger of this evidentiary blending is realized only when the conspiracy ultimately is not proven. The statements of co-conspirators then retain their character as inadmissible hearsay and the trial court must instruct the jury to disregard those statements which had been admitted conditionally pending proof of the conspiracy.

In the present case the trial court avoided this problem by holding an *in camera* hearing prior to trial to determine the admissibility of the statements made by co-conspirators. During this hearing the hearsay statements themselves were introduced prior to the independent evidence of the conspiracy. The proof of the conspiracy was straightforward and simple. Both Jane Kolbash and Anna Hawk testified that Ann Miller told her she should talk with Bob Bowen about her financial future. Each testified that Miller was present during her meeting with Bowen, and both Miller and Bowen advised her to meet with the appellant. Each of the victims met with the appellant and followed his investment advice. From this evidence the trial court correctly concluded at the close of the *in camera* hearing that a conspiracy existed.

We are not concerned with the order of proof of the conspiracy presented to the trial court *in camera.* Once the trial court correctly determines *in camera* that the State has evidence sufficient to prove the conspiracy, the order of proof to the jury becomes a matter of prosecutorial discretion and is outside our ruling in *Harjo.* In *Harjo* apparently no *in camera* hearing was held, therefore the order of proof of the conspiracy was of critical importance. In the present case the *in camera* hearing eliminated the danger of conditionally admitted hearsay blending with the independent evidence of the conspiracy prior to a determination of admissibility. Therefore, under these circumstances, we find that the fact that hearsay statements were introduced into evidence prior to independent evidence of the conspiracy is not error.

■ Appellant next attacks the Oklahoma Securities Act, 71 O.S.1981, §§ 101, 201, and 301 as unconstitutionally vague and overbroad. Appellant argues that the terms "security", "broker/dealer", "issuer", "investment advisor" and "sale" are defined in such a way that a person of common understanding cannot understand the law. This question presents an issue of first impression to the Court.

Each of these terms is defined in Section 2 of the Oklahoma Securities Act. 71 O.S. 1981, §§ 1 *et seq.* "Security" is defined as any note, stock, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, certificate of deposit for a security or investment of money in the risk capital of a venture. 71 O.S.1981, § 2(20). "Broker/dealer" is defined as any person engaged in the business of effecting transactions in securities for the account of others or for his own account. § 2(5). "Issuer" means any person who issues or proposes to issue any security. § 2(9). "Investment advisor" is defined in Section 2(8) as any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in or purchasing securities. "Sale" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. § 2(13).

■ We find nothing in this language which offends the due process requirement of the federal and state constitutions that prohibited conduct be clearly defined. *See* Okl. const. art. II, § 7; U.S. Const. amend. XIV. These statutory provisions are clearly stated and understandable by an ordinary person in a commercial context. The thrust of the appellant's argument is not that the Act is incomprehensible, but that it is so far reaching. An Act is unconstitutionally overbroad only if it proscribes illegal as well as legal conduct. The legislature wrote the Act with all encompassing strokes to protect the public against blue-sky promotions and promoters, and other stock transactions not otherwise covered by law. *Nelson v. State,* 355 P.2d 413

(Okl.Cr.1960). The Act as written fulfills the legitimate governmental purpose of protecting the public from the many means promoters may use to separate the unwary from their money. The Securities Act is not unconstitutionally vague or overbroad.

■ The appellant next objects to twenty (20) incidents of alleged prosecutorial misconduct. We do not reach the merits of this argument regarding sixteen (16) of the allegedly improper statements for the following reasons. Ten (10) of the allegedly improper statements were made during closing argument which the appellant did not make part of the original record. As the Court has denied his motion to supplement the record, the alleged error contained in the closing argument is not part of the record properly before us and will not be addressed.

Two of the statements appellant now objects to were not objected to at trial. Appellant has thus waived all but fundamental error. We find these questions and answers did not inject fundamental unfairness into the trial.

■ On two occasions appellant objected on one ground, and now on appeal objects on a totally different ground. When one objection is made at trial, this Court will not address a different objection on appeal. *Tyler v. State*, 777 P.2d 1352 (Okl. Cr.1989); *Fitchen v. State*, 738 P.2d 177 (Okl.Cr.1987).

The appellant argues that one question to which his objection was sustained amounts to reversible error. The question was such that the trial court's action of sustaining the objection cured any possible error. *See Walker v. State*, 781 P.2d 838 (Okl.Cr.1989). We are unable to address one of the appellant's allegations of prosecutorial misconduct for his citation to the transcript contains no improper hearsay testimony, as he alleges, only his argument for mistrial. We will not search the record to find the errors an appellant attempts to raise. Court of Criminal Appeals Rule 3.5.

■ Appellant raises four (4) additional allegations of prosecutorial misconduct which are preserved for our review. The first two pertain to testimony by victim Jane Kolbash. She testified to the fear she had about investing her money since it was all she had for her future and that of her children. She also stated she had been through a traumatic nine months during which her husband died of lung cancer, and that she considered the appellant a friend whom she trusted. The testimony was straight-forward and the trial judge very carefully kept the testimony from going unduly into the emotional vulnerability of the witness at the time the appellant brought her into his confidence ultimately to defraud her. This evidence is admissible, even though prejudicial to the appellant, for it is highly probative, and its probative value is not substantially outweighed by the danger of unfair prejudice. *See* 12 O.S.1981, § 2403. The trial court properly admitted the evidence.

■ On cross-examination the Appellant attempted to ascertain whether Ms. Kolbash had a boyfriend in New Jersey at the time her husband was terminally ill, and the trial court sustained the State's objection. The trial court expressly told the Appellant that he could elicit testimony regarding what financial advice this man gave the victim, but not whether they were involved in a romantic relationship. The trial court properly excluded this evidence which has no probative value whatsoever. *See* 12 O.S.1981, §§ 2401, 2402.

■ Appellant also objects to the trial court allowing the State on redirect examination to delve into an issue raised by defense counsel on cross-examination. This issue is the appellant's persistent efforts to persuade Anna Hawk to help him with a sexual dysfunction problem which he claimed he could not resolve with his wife. This argument overlooks the plain statutory authority for such cross-examination. *See* 12 O.S.1981, § 2611(C). The appellant's novel argument that the State had some duty to object to defense counsel's foray into this area misapprehends the respective duties of counsel.

■ Appellant next argues that the Securities Act, 71 O.S.1981, § 401(e), which

places on him the burden to establish the affirmative defense of proving an exemption or exception from the reach of the Act, violates the Equal Protection Clause of the Fourteenth Amendment to the federal constitution. Appellant summarizes his argument by stating the Act forces him to prove his innocence.

Appellant cites no cases which have found state blue-sky laws unconstitutional for this reason. This Court has previously recognized the defendant's burden in this regard, though we have not had the occasion to expressly address the constitutionality of the burden. *See State v. Hoephner*, 574 P.2d 1079 (Okl.Cr.1978); *Sisson v. State*, 404 P.2d 55 (Okl.Cr.1965); *Nelson v. State*, 355 P.2d 413 (Okl.Cr.1960). Those Courts which have addressed this argument uniformly reject it. *See e.g. State v. Crooks*, 84 Or.App. 440, 734 P.2d 374 (1987); *State v. Burrows*, 293 Or. 691, 653 P.2d 226 (1982); *State v. Frost*, 57 Ohio St.2d 121, 387 N.E.2d 235 (1979); *Commonwealth v. David*, 365 Mass. 47, 309 N.E.2d 484 (1974); *State v. Goodman*, 21 Ariz.App. 252, 517 P.2d 1299 (1974); *People v. Dempster*, 396 Mich. 700, 242 N.W.2d 381 (Mich.1976).

We agree with these jurisdictions which are in complete agreement in their analysis of this question. The appellant would be correct if the Act required that he carry the burden of disproving an element of the offense charged. Inasmuch as the existence of an exemption is not an element of the charge, we find the appellant's challenge must fail.

█ Appellant's final argument is that his sentence, five years on the count of conspiracy and three years imprisonment on each of the remaining twelve counts all to run consecutively, is cruel and unusual punishment considering his age of sixty-eight years and the fact that he has no previous known criminal activity. Appellant asks this Court to modify his sentence.

█ The review of a sentence in a non-capital case is not a review *de novo*. The appellate court modifies a sentence only where trial error requires modification, *see e.g. Treece v. State*, 753 P.2d 377

(Okl.Cr.1988); *Scott v. State*, 751 P.2d 758 (Okl.Cr.1988), *cert. denied* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1988), or the sentence shocks the conscience of the court. *See e.g. Middaugh v. State*, 767 P.2d 432 (Okl.Cr.1988); *Edwards v. State*, 663 P.2d 1233 (Okl.Cr.1983). Modification is most often the result where the Court finds that trial error led to a sentence driven by passion and prejudice. *See e.g. Massingale v. State*, 713 P.2d 15 (Okl.Cr. 1986); *Freeman v. State*, 681 P.2d 84 (Okl. Cr.1984); *Green v. State*, 611 P.2d 262 (Okl.Cr.1980), *cert. denied* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1980).

In the present case we find no errors which injected passion or prejudice into the sentencing decision. Examining the five and three year sentences, we find that the conspiracy charge carries a maximum sentence of ten (10) years, 21 O.S.1981, § 421, and the maximum penalty possible under the provisions of the Securities Act is three (3) years imprisonment. 71 O.S.1981, § 407. The imposed sentence is within the range of punishment set by the legislature. We find nothing in the sentence which indicates the jury was swayed by improper prejudice against the appellant and we find nothing which shocks the conscience of the Court. The trial court has complete discretion regarding whether the sentences shall be served consecutively or concurrently. Absent an abuse of that discretion, this court will not disturb the sentence imposed by the trial court. *See King v. State*, 640 P.2d 983 (Okl.Cr.1982); *Sherrick v. State*, 725 P.2d 1278 (Okl.Cr.1986). We find no abuse of discretion and affirm the judgment and sentence.

LUMPKIN, V.P.J., and BRETT and JOHNSON, JJ., concur.

PARKS, J., concurs in result.

PARKS, Presiding Judge, concurring in result:

I concur in all respects with the majority opinion except that portion which addresses appellant's third assignment of error. The majority holds that "[o]nce the trial court correctly determines *in camera* that the

state has evidence sufficient to prove the conspiracy, the order of proof to the jury becomes a matter of prosecutorial discretion and is outside our ruling in *Harjo.*" Majority at 598. I disagree. The purpose of the trial court's *in camera* hearing in these matters is to make a *preliminary* factual determination that (1) a conspiracy existed, (2) the declarant and the defendant against whom the declarations are offered were members of the conspiracy, and (3) the statements were made in the course and in furtherance of the conspiracy. *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987); *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 869 (10th Cir.1989); *Harjo,* 797 P.2d at 344. The majority correctly states that a trial court may consider both independent evidence and hearsay statements, in no particular order, when making such a determination. *See Id.* at 344–45. However, the majority does not recognize that this determination is *preliminary* in nature.

In *Laske,* this Court held that *at the conclusion of all the evidence,* the trial court *must determine as a factual matter* whether the prosecution has satisfied its burden under 12 O.S.1981, § 2801(4)(b)(5). *Laske,* 694 P.2d at 538. *See also Harjo,* 797 P.2d at 343. A trial court is unable to make such a determination at an *in camera* hearing prior to trial, as there are no assurances that exactly the same evidence will be offered and admitted during the course of trial.

If a co-conspirator's hearsay statement is admitted prior to the independent evidence, and the State does not subsequently satisfy the evidentiary predicates for admissibility, then the court is faced with instructing the jury to disregard the statement or, in appropriate circumstances, granting a mistrial if a cautionary instruction will not suffice to cure the prejudice caused by admitting the statement into evidence. Moreover, there exists a danger that *conditionally* admitted hearsay, combined with other evidence subsequently admitted, will blend such "that there [will be] no dis-

tinction between hearsay and non hearsay."
*Id.,* at 345 (citations omitted) (emphasis added). It is for these reasons that the *Harjo* Court specifically "decline[d] to abandon that portion of our *Laske* decision which mandates that independent evidence be presented to the jury before co-conspirator hearsay testimony is admitted. *Harjo,* 797 P.2d at 345.

Notwithstanding the erroneous order in which co-conspirator testimony and independent evidence was admitted in the present case, or the fact that the trial court did not make a final determination under Section 2801(4)(b)(5), I find no reversible error. The record supports a finding (1) that a conspiracy existed; (2) that the co-conspirator and the defendant against whom the co-conspirator's statements were offered were members of the conspiracy, and (3) that the statements were made during the course and in furtherance of the conspiracy. On this basis, I concur in the affirmance of appellant's conviction.