(817 P.2d 1105)

No. 65,721

STATE OF KANSAS, *Appellee*, v. HUGO RIBADENEIRA, *Appellant*.

Petition for review denied September 24, 1991.

Opinion filed August 2, 1991.

*John V. Wachtel, Jacqueline K. Levings*, and *Troy H. Gott*, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for the appellant.

*Roger N. Walter*, general counsel, Office of the Securities Commissioner of Kansas, of Topeka, for the appellee.

Before LARSON, P.J., LEWIS and PIERRON, JJ.

LEWIS, J.: This is an appeal by the defendant, Hugo Ribade-neira, from his convictions of two counts of securities fraud, one count of selling securities while not registered as a broker, and one count of selling unregistered securities. As a result of his convictions, the defendant was sentenced to a term in the custody of the secretary of corrections, and restitution was ordered in the amount of $35,272.80.

The facts of this case are complex and rather convoluted. We will not, however, state them in detail but only as necessary to discuss the numerous issues involved in this appeal. During the years of 1983, 1984, and 1985, the defendant was involved in a number of building projects in Wichita. In order to accomplish these projects, two limited partnerships were formed, and the defendant was involved in managing and selling units in the limited partnerships to investors. One of these limited partnerships was known as Emporia Street Limited Partnership, and will be referred to in this opinion as ESLP. The other limited partnership is known as North Rock Road Limited Partnership, and will be referred to in this opinion as NRRLP.

The State charged that the defendant committed various and sundry fraudulent, deceptive, and misleading actions concerning the sale of units in ESLP and NRRLP. There were a number of investors who the State alleges were defrauded by the defendant's activities.

Ultimately, it appears that the ventures in which the limited partnerships were involved were failures. The individuals who had purchased units in those limited partnerships from the defendant lost some, if not all, of their money.

The defendant was charged with four counts and tried on the third amended information filed in this action. He was ultimately convicted, as noted above, and appeals those convictions. Further facts concerning the defendant's crimes will be developed as necessary in dealing with the many issues raised by the defendant on this appeal.

The defendant has briefed and argued 13 separate specifications of error on this appeal. We shall deal with each specification of error on an individual basis.

## WAS THE BURDEN OF PROOF UNCONSTITUTIONALLY SHIFTED TO THE DEFENDANT?

K.S.A. 17-1262 lists 17 types of transactions which are exempted from the provisions of K.S.A. 17-1254 and K.S.A. 17-1255. If any of the defendant's activities fell within one of those 17 exemptions, the action would not be criminal. K.S.A. 17-1272 provides that the State need not negate, in the indictment or information, any of these exemptions. The statute provides that the burden of proving any of the exemptions "shall be upon the party claiming the benefit of such exemption."

Since it is the defendant in this matter who wishes to claim the benefit of exemptions under 17-1262, the provisions of 17-1272 place the burden of such proof upon him. This, defendant claims, is an unconstitutional shifting of the burden of proof from the State to the defendant and deprives him of due process. We do not agree.

We dealt with this issue specifically and precisely in *State v. Kershner*, 15 Kan. App. 2d 17, 801 P.2d 68 (1990). In *Kershner*, the same issue was raised, and we decided it adversely to the defendant, holding that 17-1272 does not unconstitutionally shift the burden of proof to defendant. We held that 17-1272 merely required a defendant to produce such facts, if they existed, as might exonerate him from the crime charged. The exemptions listed in the statute constitute affirmative defenses which the defendant legitimately has the burden of proving. In addition to *Kershner*, a number of our sister states have taken the same approach to the issue. See *Commonwealth v. David*, 309 N.E.2d 484, 490 (Mass. 1974); *State v. Fries*, 214 Neb. 874, 883, 337 N.W.2d 398 (1983); *State v. Hoephner*, 574 P.2d 1079, 1081 (Okla. Crim. 1978); *State v. Crooks*, 84 Or. App. 440, 734 P.2d 374 (1987).

On the basis of *Kershner* and the other decisions listed above, we hold defendant's claim of an unconstitutional shifting of the burden of proof is without merit.

## IS A GENERAL PARTNERSHIP INTEREST A SECURITY?

Among other things, defendant was charged with defrauding Dr. Monty Menhusen. The facts show that Dr. Menhusen purchased a general partnership interest in ESLP. The defendant

argues that a general partnership interest is not a security and, hence, the sale was not in violation of the law.

The question we must determine is whether, under the facts and circumstances presented, the sale of a general partnership interest in ESLP was or could be found to be the sale of a security.

There are a number of tests that have been applied to determine whether a particular item or interest sold is a security. The United States Supreme Court, in *S.E.C. v. Howey Co.*, 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100 (1946), developed a three-prong test to determine whether an interest sold was a security. The *Howey* test defines a security as (1) an investment of money, (2) in a common enterprise, (3) *with the expectation that profits will be derived solely from the efforts of others.* 328 U.S. at 301. The third prong, as emphasized, is the key element in defining whether a particular investment is a security or is some other form of investment.

The *Howey* test was amended by the United States Supreme Court in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 44 L. Ed. 2d 621, 95 S. Ct. 2051 (1975). The court in *Forman* held that a security was an investment "in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial and managerial efforts of others." 421 U.S. at 852.

These definitions of a security have been largely adopted in Kansas in *State ex rel. Owens v. Colby*, 231 Kan. 498, 646 P.2d 1071 (1982), and *Activator Supply Co. v. Wurth*, 239 Kan. 610, 722 P.2d 1081 (1986). In *Colby*, the court indicated that, in determining whether a particular financial relationship constitutes an "investment contract" and, therefore, a security under K.S.A. 17-1252(j), the test to be applied is whether the contractual arrangement involves an investment of money in a common enterprise with profits to come from the efforts of others. This test is to be applied in light of the economic realities of the particular contractual arrangement rather than simply accepting the terminology employed by the parties. *Colby*, 239 Kan. at 504. The *Colby* test was approved and reapplied in *Activator Supply*. The court in *Activator Supply* modified, to a degree, the definition of whether profits came from the efforts of others:

"The *Colby* test for an investment contract requires a contractual arrangement which involves an investment with profits to come *from the efforts of others*. We agree with the court in *Securities & Exchange Comm'n v. Glenn W. Turner Ent., Inc.*, 474 F.2d 476 [9th Cir. 1973], that the test to be applied is whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise. To hold otherwise would make it easy to evade the existence of an investment contract by adding a requirement in the contract that the buyer contribute a modicum of effort. The *Turner* test was applied in *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414 [8th Cir. 1974]." 239 Kan. at 620.

With these definitions in mind, it should be obvious that the sale of limited partnership interests are always sales of securities. *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987). By their very definition, limited partners are passive and precluded from any active participation in management by the terms of the agreement. Hence, the expectation of limited partnership profits will always come through the managerial or entrepreneurial efforts of others. See 12 Long, Blue Sky ·Law § 2.04(2)(d), pp. 2-119-21 (1991 rev.).

By the same token, the sale of a general partnership interest is *generally* not considered the sale of a security. In a true general partnership, management and control is shared by all general partners. An individual who is a bona fide general partner is working for a profit through his own managerial skills and not those of others.

However, our Supreme Court has made it very clear that the fact of labeling something as a general partnership does not make it so. As Justice Prager said in *Activator Supply*: "This test is to be applied in light of the economic realities of the particular contractual arrangement . . . ." 239 Kan. 610, Syl. ¶ 5. An interest labeled a general partnership interest can, in fact, be a security despite its denomination. To determine whether it is or not, it must be determined whether the investor does or does not have any real managerial functions. If, in fact, the efforts made by those other than the investor "are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise," then the interest is a security despite its labeling as a general partnership interest. See 239 Kan. 610, Syl. ¶ 8.

In the final analysis, whether the sale of a general partnership interest in ESLP was the sale of a security was a decision for the jury. It is, pure and simple, a question of fact.

The jury was properly instructed as to the law to be applied to the facts in deciding the issue. The *Howey* test and the test applied in *Colby* were included in those instructions. The jury determined that the sale of the general partnership interest in ESLP was the sale of a security.

The scope of our review over a jury verdict has been often stated. We are required to view the evidence in the light most favorable to the party prevailing on the issue, in this case the State of Kansas. If, when viewed in that light, there is substantial competent evidence from which the jury might have found the defendant guilty beyond a reasonable doubt, we affirm the decision of the jury. *State v. White,* 246 Kan. 28, 37-38, 785 P.2d 950 (1990); *State v. Kershner,* 15 Kan. App. 2d at 22. A guilty verdict will not be disturbed if based on substantial competent evidence. *State v. Williams,* 234 Kan. 233, 239, 670 P.2d 1348 (1983); *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980).

Our review of the record reveals substantial competent evidence from which the jury could have concluded, beyond a reasonable doubt, that the sale of a general partnership interest in ESLP was the sale of a venture in which Dr. Monty Menhusen's expectation of profits was to be derived from the efforts of individuals other than himself. We do not intend to recount all of that evidence in this opinion. The testimony of some of the other investors and general partners in ESLP indicated that it was the defendant who exercised all management authority. The offering memorandum used by the defendant for the sale of limited partnership interests in ESLP stated:

"Reliance on RIBADENEIRA. RIBADENEIRA will exercise full control over all activities of the Partnership. Participants will have no power over the conduct of Partnership operations. Accordingly, Participants must rely solely on RIBADENEIRA'S ability to manage the affairs of the Partnership."

Although this statement was meant to apply to the purchase of limited partnership interests, in fact the evidence showed that it applied with equal vigor to interests purchased as general partnership interests. The ultimate success and control of the en-

deavor rested on defendant's managerial and entrepreneurial skills. We hold the jury properly concluded the general partnership interest sold to Dr. Menhusen was the sale of a security.

## INSTRUCTION 21

The defendant contends that the trial court erred in the giving of instruction 21. We agree, and we reverse the conviction of the defendant on count II of the third amended information.

Count II of the third amended information charged the defendant with certain unlawful acts in connection with the sale of units in NRRLP. In the bill of particulars filed at the behest of the defendant, the State indicated that among the actions alleged as a basis for the charge in count II was the failure to disclose to investors what occurred on an earlier offering described as made "on a best efforts minimum amount or none basis."

The "best efforts minimum amount or none basis" offering was made in connection with the sale of units in NRRLP. The investors were told that any money invested would be held in a separate escrow bank account. They were further advised that a minimum sum of money would be raised, and if that amount was not raised by a certain date, all funds would be returned to the investors. In fact, the defendant did not deposit the funds in the separate account as promised, and the minimum amount required to be raised was not raised prior to breaking escrow. The State contended that the failure of the defendant to disclose this information to subsequent investors in NRRLP was a failure to disclose material facts.

Count II of the third amended information charged that the defendant in connection with the sale of securities to the NRRLP did

"directly or indirectly, employ devices, schemes or artifices to defraud, or make untrue statements or omit to state material facts necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading or engage in an act, practice or course of business which operated or would operate as a fraud or deceit upon Gladys Anderson, Gerald Cass and Lois Ann Swartz."

Instruction 13 advised the jury as follows:

"To establish this charge, each of the following claims must be proved:
"1. That the defendant did one or more of the following:

"a. willfully and intentionally employed a device, scheme or artifice to defraud; or

"b. willfully made an untrue statement of material fact, or omitted to state a material fact; or,

"c. engage in an act, practice, course of business which would operate as a fraud upon one or more of the following individuals: Gladys Anderson, Gerard Kass, or Lois Ann [Swartz].

"2. That the unlawful act occurred in connection with the sale of a security, to wit: units of [NRRLP] . . . .

"3. That if the unlawful act was an omission to state a material fact, that the material fact was necessary in order to make other statements made to one or more of the following individuals: . . .; in the light of the circumstances under which they were made, not misleading."

Instruction 21, of which the defendant complains, advised the jury as follows:

"You are instructed that when securities are offered as of this case, '$750,000 or NONE,' the money or consideration received must be (1) promptly deposited in a separate bank account as agent for the person until the event or contingency occurs and then the funds are promptly transmitted to the persons entitled thereto or (2) all such funds are promptly transmitted to a bank which has agreed in writing to hold such funds in escrow for the persons who have beneficial interests therein and to transmit or return such funds directly to any person entitled thereto when the event or contingency has occurred. *The failure of a broker or dealer to deposit in an agency or escrow account is a fraudulent, deceptive or manipulative practice.*" (Emphasis added.)

It is difficult to understand why instruction 21 was given in the matter under consideration. We are advised by both parties to this litigation that instruction 21 is simply a restatement of federal regulation 15c2-4, 17 C.F.R. § 240.15c2-4 (1990), of the Securities Exchange Act of 1934, 15 U.S.C. § 78 (1988). There is no question but that the failure of the defendant to comply with federal regulation 15c2-4 is a manipulative and deceptive act or practice *under federal law*. However, this case was not tried under federal law. The defendant was charged and tried for violating the statutes of the State of Kansas. While the defendant's violation of regulation 15c2-4 may have been a manipulative or deceptive practice under federal law, no one has shown us where it has been defined as such under Kansas law. The instruction does not state the law of Kansas; it was clearly erroneous and inappropriate. We think the instruction clearly implies that the

defendant has violated state law by his activities. This implication was incorrect and, in our judgment, highly prejudicial.

We believe the effect of the instruction is similar to what happened in *State v. Puckett*, 6 Kan. App. 2d 688, 634 P.2d 144 (1981), *aff'd* 230 Kan. 596, 640 P.2d 1198 (1982). In *Puckett*, the jury was instructed that certain actions by the defendant constituted fraud because of his failure to state a material fact, which fact was then stated to the jury. We held the instruction invaded the province of the jury and reversed, stating:

"The problem with the fraud instructions, exemplified by number 7, involves the first paragraph of each of the alternative portions of the instruction. Obviously, since this instruction was in the alternative, the jury could have found the defendant guilty on the first portion, or the second portion or the final portion of those instructions. That portion of the instruction preceding the first 'OR' is faulty for the following specific reason. Such instruction means to us that the jury was told that if it found the defendant did not reveal the facts of the carried interests that he was guilty of a scheme to defraud the investors. This would violate the right of the defendant to have the jury find that even though there was a failure to reveal the fact of the carried interests, such failure was not part of a scheme to defraud. Similarly under alternatives two and three of the instructions, the first paragraphs also instruct the jury that if they found the defendant did not reveal the facts of the carried interests that defendant was guilty of failure to disclose a material fact. The hotly contested issue in this case was whether the failure to disclose the fact of the carried interests was a failure to disclose a *material* fact. The trial judge specifically held that in view of the disputed evidence whether a carried interest was material was an issue for the jury. Yet the instructions take the issue of materiality from the jury and leave them only the issue of whether the defendant failed to disclose the carried interests. The jury was thus allowed to convict the defendant of a crime in the total absence of a finding of one of the necessary elements of the crime charged, *i.e.*, materiality.

. . . .

"Since we are unable to say that the jury would have convicted the defendant in the absence of the offending portion of the fraud instructions, it follows that those instructions are error, and that such error is of constitutional gravity." 6 Kan. App. 2d at 701-02.

In the matter now before this court, instruction 21 has, we believe, an effect similar to the offending instruction in *Puckett*. As noted, instruction 13 is framed in general terms. Instruction 21, however, tells the jury that the failure of a broker or dealer to "deposit in an agency or escrow account is a fraudulent, deceptive, or manipulative practice." Thus, the jury was told that,

if it found that defendant failed to "deposit in an agency or escrow account," he was guilty of a "fraudulent, deceptive, or manipulative act." This is almost identical to the situation in *Puckett*, and it leads us to the same conclusion.

The State points out that it was not seeking to convict the defendant for having committed the acts which are described as fraudulent, deceptive, and manipulative in instruction 21. It was, it argues, only seeking to convict him of securities fraud for having failed to disclose that he committed the acts described in instruction 21. The State then argues that the trial judge instructed the jury as to what a material fact was in paragraph 6 of instruction 16. This is correct. The jury was advised in instruction 16 as follows: "6. 'Material fact' means that there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to purchase securities."

The State then argues that instruction 21 does not advise the jury that the failure to disclose the regulation 15c2-44 violation was a material fact.

We believe the State's argument fails to appreciate the seriousness of the wrong done by the giving of instruction 21. This was a complex and somewhat confusing case which appears to have confused the judges and the attorneys and must also have been somewhat confusing to the jury. The jury is told by instruction 21 that defendant's actions were fraudulent, deceptive, and misleading. The jury was instructed that a material fact was any fact that a reasonable investor would consider important in deciding whether to purchase securities. It is difficult to imagine how the jury could have concluded that a reasonable investor would not consider it important in deciding whether to purchase securities that the seller of those securities had committed a fraudulent, deceptive, and misleading act in connection with the sale of the securities. It is quite obvious to us, and must have been to the jury, that the failure to disclose fraudulent, deceptive, and manipulative acts must have been material.

Under the law of this state, the defendant's actions in connection with the "breaking escrow" and his failure to keep a proper bank account were not fraudulent, deceptive, and manipulative as a matter of law. The jury should have been permitted to decide that issue. Instead, the jury was wrongfully told that

defendant's actions were improper, fraudulent, deceptive, and misleading as a matter of law. This instruction simply does not state the law of Kansas. The instruction invaded the province of the jury and was extremely prejudicial to the defendant.

The State further argues that, even assuming instruction 21 was erroneous, it is harmless error. The argument is that there were substantial alternative grounds on which the jury might have based its conclusion that defendant committed unlawful acts in selling NRRLP units to Anderson, Cass, or Swartz. This argument is, for the most part, an argument that the jury would have convicted him anyway, and, as a result, instruction 21 is harmless error. We disagree.

There were no special questions submitted to this jury, and the guilty verdict under count II is a general verdict. For that reason, we have no way of knowing why the jury convicted the defendant on count II. The Kansas Supreme Court in *Franklin v. Northwest Drilling Co., Inc.*, 215 Kan. 304, 524 P.2d 1194 (1974), faced a situation very similar to the issue at bar. In *Franklin*, the jury was given an instruction which was erroneous as a matter of law. In reversing, the Kansas Supreme Court based its decision on the fact that the verdict returned was a general verdict. The court stated:

"Under the rules of law this court should disregard errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining. [Citations omitted.] Misleading instructions given may become immaterial where it conclusively appears from special findings that the jury was not influenced thereby. [Citation omitted.] It has been said a general verdict in a case resolves all controversial issues in favor of prevailing party. [Citations omitted.]

"However, the difficulty we find in applying the foregoing rules in this case stems from the refusal of the trial court to submit special questions. There are no special findings from which to determine lack of prejudice. Here two of three theories of recovery were tried to a jury upon a general verdict with erroneous charges. It seems obvious in this case that the rules as to nonprejudicial error cannot be applied. In fairness and justice we must hold under the circumstances of the case the general verdict cannot be upheld. To hold otherwise would require speculation and conjecture that the general verdict was on the proper theory and not on improper theories." 215 Kan. at 314-15.

The court continued:

"We state the rule as follows: In the absence of special findings by the jury, when an instruction is given on a theory of a case which is erroneous as a matter of law and the instruction is inclined to lead the jury to attach undue significance to evidence bearing upon another theory properly submitted, a reversal is required in the interest of fairness, even though the jury returned a general verdict. [Citations omitted.]" 215 Kan. at 315.

In *State v. Spears*, 246 Kan. 283, 788 P.2d 261 (1990), the Kansas Supreme Court reversed a criminal conviction on the basis of a misleading jury instruction. Although the court noted that the likelihood of prejudice was low due to overwhelming evidence, it had no way of guaranteeing the jury did not return a guilty verdict based on the erroneous instruction.

In the instant matter, we have no way of guaranteeing that the jury did not return a guilty verdict based upon erroneous instruction 21. For that reason, we have no choice but to reverse the defendant's conviction on count II and remand for a new trial.

## INSTRUCTIONS 12 AND 13

The defendant contends that his conviction on count I of the information should be reversed because of instructions 12 and 13 given to the jury. We do not agree.

Instruction 12 reads as follows:

"Defendant is charged in Count I with the crime of Unlawful Acts in Connection with the Offer, Sale, or Purchase of Securities. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant did one or more of the following:

"a. willfully and intentionally employed a device, scheme or artifice to defraud Monty [Menhusen]; or,

"b. willfully made an untrue statement of material fact, or omitted to state a material fact; or,

"c. engaged in an act, practice, [or] course of business which would operate as a fraud upon Monty [Menhusen].

"2. That the unlawful act occurred in connection with a sale of percentage of the General Partnership Interest in Emporia Street Limited Partnership, to Monty [Menhusen].

"3. That the general partnership interest sold to Monty [Menhusen] was a security.

"4. That if the unlawful act was an omission to state a material fact, that the material fact was necessary in order to make other statements made to Monty [Menhusen], in the light of the circumstances under which they were made, not misleading; and

"5. That the act occurred on or about the 17th day of June, 1985, in Sedgwick County, Kansas."

Instruction 13 is identical to instruction 12 with the following exceptions: different victims are identified, the dates of the sales are changed, and the security involved is identified as units of NRRLP. Otherwise, the instructions are identical.

The defendant contends the instructions are erroneous because they are drafted so as to presume a scheme to defraud or to presume that any misrepresentations or omissions were "material." This, the defendant argues, invades the province of the jury to determine what was fraudulent and what was material.

At trial, the defendant did not object to the giving of instructions 12 and 13. As a result, our standard of review is to determine whether the instructions were "clearly erroneous." *State v. Puckett*, 6 Kan. App. 2d at 693. "An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." *State v. Stafford*, 223 Kan. 62, 65, 573 P.2d 970 (1977).

The defendant relies on *State v. Puckett* as the principal support for his argument. His reliance is erroneous. In *Puckett*, we held the instruction improper because it essentially advised the jury that, if defendant failed to reveal certain facts, he was guilty of fraud. The instructions further advised the jury that the failure to disclose was a material fact. We held that the question of what was fraud and what facts were material were decisions to be made by the jury. An instruction which foreclosed this decision-making process was erroneous and invaded the exclusive factfinding domain of the jury.

We hold that *Puckett* is not controlling. The instructions complained of in the matter under consideration are not clearly erroneous. They do not purport to tell the jury that any action by defendant constitutes fraud or that any facts either disclosed or withheld are material. The decision on those factual questions is left with the jury. The complained-of instructions were correct and properly given. They are not clearly erroneous and do not require a reversal of defendant's conviction.

### DID THE TRIAL COURT ERR IN SENTENCING?

Defendant contends that the trial court erred in refusing to

grant him probation. Defendant points out that he was convicted of class E felonies, which are his first and only convictions. He argues that the trial court failed to follow the presumptive sentence of probation statute and that, because the State failed to overcome this statutory presumption, the court erred in sentencing him to prison.

The presumption of probation statute in effect at the time of these offenses was K.S.A. 1985 Supp. 21-4606a. See *State v. Sylva*, 248 Kan. 118, 121, 804 P.2d 967 (1991). That statute provides that the presumptive sentence of a first time class E felon is probation. However, we have held that this presumption can be overcome by evaluating all of the circumstances and factors contemplated by K.S.A. 21-4601 and K.S.A. 21-4606. *State v. Tittes*, 245 Kan. 708, 715, 784 P.2d 359 (1989).

We have examined the record of the present controversy and find that the question of sentencing was very thoroughly considered. There are over 20 pages of transcript devoted to the question of whether the presumption of probation could be overcome. Defense counsel discussed each factor listed in K.S.A. 21-4606. The State then addressed and rebutted the arguments of the defendant. The State and defendant debated all of the elements that are involved in deciding whether to impose the presumptive sentence.

Our standard of review of a denial of presumptive probation is abuse of discretion. *State v. VanReed*, 245 Kan. 213, 217, 777 P.2d 794 (1989). Based on the record before us, we cannot say the trial court abused its discretion. The issues involving presumptive probation were discussed and considered by the court. The trial court considered all of the facts and concluded that the presumption of probation had been overcome. We agree and affirm that decision.

## WAS THE INFORMATION DEFECTIVE?

The defendant contends that the information filed in the action was defective, thereby depriving the trial court of jurisdiction. We note that no fewer than three amended informations were filed in this action. The defendant was tried on the third amended information, and we focus on that particular information.

The defendant argues that the information is defective in failing to allege specific facts and details. He maintains that the information failed to inform him of what facts he had to defend against, such as how the frauds were committed, what statements made were material, what omitted statements were material, etc.

A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void. Failure of an information to sufficiently state an offense is a fundamental defect which can be raised at any time. The sufficiency of the information is to be measured by whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. Although the accused has the right to know the nature of the charges against him, the information need not set forth all of the specific evidentiary facts relied upon to sustain the charge. If the allegations in an information charge an offense in the language or meaning of a specific statute, the information is sufficient. *State v. Bird,* 238 Kan. 160, 166-67, 708 P.2d 946 (1985); see *State v. Garner,* 237 Kan. 227, 237, 699 P.2d 468 (1985).

Tested by the rules set forth above, the information is not defective, and defendant's argument lacks merit.

The information in this case charges the crime of securities fraud in the language of K.S.A. 17-1253, which defines that crime. The Kansas Supreme Court, in *State v. Bird,* 238 Kan. at 167, said:

"This court has repeatedly held that an information which charges an offense in the language of the statute is sufficient. *State v. Garner,* 237 Kan. 227, 237, 699 P.2d 468 (1985); *State v. Lucas,* 221 Kan. 88, 89, 551 P.2d 1296 (1976); *State v. Barry,* 216 Kan. 609, 619, 533 P.2d 1308 (1974)."

We see no reason to belabor the point. The information in this case charges the offense in the language of the statute, and it is sufficient.

The defendant's objections go more to the specificity of the language employed in the information. He complains of the lack of facts and details. As the court said in *State v. Bird,* 238 Kan. 166: "[T]he information need not set forth all the specific evidentiary facts relied on to sustain the charge." A defendant who wants to know the "manner or means" specified to aid him in his defense may request a bill of particulars pursuant to K.S.A.

22-3201(5), and his failure to do so waives the objection. *State v. Bird,* 238 Kan. at 167. The defendant in the instant matter requested and received a bill of particulars. We have examined the bill of particulars and hold that whatever "specificity" the information lacked was supplied by the bill of particulars.

Defendant argues that securities fraud is a specific intent crime and the information fails to allege the element of scienter. We do not agree. We stated in *State v. Kershner,* 15 Kan. App. 2d 17, 20, 801 P.2d 68 (1990):

"Defendant argues that the crimes with which he was charged were specific intent crimes but, due to the trial court's erroneous interpretation of 'willful' under K.S.A. 17-1267(a), the State did not sustain its burden of proof.

"While the Kansas Securities Act does not define 'willful,' our Supreme Court has. *No specific intent is required where one violates the Securities Act 'except the intent to do the act denounced by statute.' State v. Hodge,* 204 Kan. 98, 107, 460 P.2d 596 (1969).

" 'Willfully' under 17-1267 means the defendant acted intentionally in the sense that he was aware of what he was doing. *State v. Puckett,* 6 Kan. App. 2d 688, 699, 634 P.2d 144 (1981), *aff'd* 230 Kan. 596 (1982). Sister states have also found that specific intent is not required to sustain a conviction under similar statutes. See, *e.g., State v. Fries,* 214 Neb. 874, 337 N.W.2d 398 (1983); *State v. Sheets,* 94 N.M. 356, 610 P.2d 760 (1980)." (Emphasis added.)

In the case under consideration, the information specifically alleges that defendant acted willfully. Since securities violations are not specific intent crimes, this is all that was required. Based on *Kershner,* defendant's argument in this regard is without merit.

## WAS DEFENDANT SUBJECTED TO UNCONSTITUTIONAL DOUBLE JEOPARDY?

The defendant next argues that his conviction cannot stand because it violated his right to be free from double jeopardy. The double jeopardy argument is based upon the occurrence of two unrelated events.

The defendant was convicted on the second effort of the State to try him on the charges. The first attempt ended in a mistrial being declared after the jury was impaneled and sworn but before any evidence was presented.

After the jury was impaneled, both sides pointed out that the trial court had only permitted them three peremptory challenges. Since the law clearly permits six such challenges per side, it became immediately obvious that an error had occurred. The court proposed calling six additional jurors and then allowing each side to exercise their remaining peremptory challenges against those six potential jurors. This proposal was not satisfactory, and, at this point, *both the State and the defendant jointly moved for a mistrial.* This motion was granted by the court.

Under the law, jeopardy attaches when a jury is impaneled and sworn. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977). In this matter, the jury had been impaneled when the mistrial was granted and defendant had been placed in jeopardy.

Under the circumstances presented, it appears that defendant was twice placed in jeopardy. The question is whether, under the facts, that was a violation of defendant's constitutional rights. There are several circumstances in which a second trial may be had after a mistrial has been declared.

One common standard employed in resolving an issue of this nature is whether the mistrial was declared due to manifest necessity. When circumstances manifest a necessity for doing so, a trial court may, in its sound discretion, declare a mistrial, discharge the jury, and require a defendant to stand trial before another jury where failure to do so would defeat the ends of justice to either or both parties. *State v. Bates,* 226 Kan. 277, Syl. ¶ 5, 597 P.2d 646 (1979). We do not reach the question of manifest necessity.

Another exception to a double jeopardy claim on a second trial is when the first trial was terminated because of some action on the part of the defendant. See *State v. Bates,* 226 Kan. at 283. A defendant who successfully moves for a mistrial because of prosecutorial or judicial misconduct may not invoke double jeopardy against a second trial unless the misconduct giving rise to the mistrial was intended to provoke the defendant into moving for a mistrial to begin with. *Oregon v. Kennedy,* 456 U.S. 667, 679, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982).

In the matter under consideration, the mistrial was granted on the *joint* motion of both parties. The defendant is in no position

to move for a mistrial, under the circumstances shown, and then argue that his second trial constitutes double jeopardy. The law would require a defendant under these circumstances to show that the trial court intentionally deprived him of three peremptory challenges to provoke him into requesting a mistrial. There is nothing in the record to even suggest that the trial court's actions were designed to provoke defendant. We hold that, on the facts shown, defendant's constitutional right against being placed in double jeopardy was not violated by the actions of the trial court in granting defendant's motion for a mistrial.

The defendant next argues that, after the jury was impaneled in the second trial, the trial judge dismissed count I of the second amended information and, thereby, acquitted him. Defendant argues that, under the rules of *Lowe v. State,* 242 Kan. 64, 744 P.2d 856 (1987), the State should not have been allowed to amend the information and place defendant on trial under that information.

In *Lowe v. State,* the defendant was being tried on one count of theft and one count of burglary. After the State had rested its case, the trial court dismissed the theft charge on the grounds that the evidence was insufficient. The next day, the trial court changed its mind and reinstated the charge. Our Supreme Court held that the reinstatement of the theft charge placed the defendant in double jeopardy and reversed his conviction.

"It is conceded that in the present case jeopardy had attached in the original trial and the dismissal constituted an acquittal of the theft charge. The reinstatement of the theft charge the next day and its submission to the jury constituted 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged' which, under *Smalis,* constituted a violation of the prohibition against double jeopardy." *Lowe v. State,* 242 Kan. at 67.

In reversing, our Supreme Court relied on the decision in *Smalis v. Pennsylvania,* 476 U.S. 140, 90 L. Ed. 2d 116, 106 S. Ct. 1745 (1986). In that case, the trial court sustained a demurrer to the State's evidence at the close of its case. The question was whether the State could appeal that decision. The United States Supreme Court held that sustaining the demurrer had the effect of acquitting the defendant, and the State's appeal was barred by double jeopardy. The Court explained:

"The Commonwealth argues that its appeal is nonetheless permissible under *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294 [, 80 L. Ed. 2d 311, 104 S. Ct. 1805] (1984), because resumption of petitioners' bench trial following a reversal on appeal would simply constitute 'continuing jeopardy.' . . . But *Lydon* teaches that '[a]cquittals, unlike convictions, terminate the initial jeopardy.' 466 U.S., at 308. Thus, whether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. *Arizona v. Rumsey,* 467 U.S. 203, 211-12 [, 81 L. Ed. 2d 164, 104 S. Ct. 2305] (1984)." 476 U.S. at 145.

The key element in *Lowe* and in *Smalis* was the acquittal of the defendant by the trial court after the State had rested its case. Thus, the question at hand is whether the trial court's action in the instant matter amounted to an acquittal.

Although the record is confusing, it appears to us that the trial court's action in this case did not have the effect of acquitting the defendant. Under the facts presented, the action of the trial court could not have been an acquittal based on the insufficiency of the State's evidence. The action was taken *prior to any evidence being submitted by either side.* This fact alone distinguishes it from *Lowe* and *Smalis,* when the court acted after the State had rested its case.

Our examination of the record indicates that defendant was not seeking an acquittal in pursuing his motion to dismiss. His principal argument was that the information was deficient and did not charge the crimes with sufficient specificity. The trial court agreed and held that the information did not charge the crimes for which defendant was bound over and permitted the State to amend to correct that error. The court, in attempting to explain its action, stated:

"THE COURT: Well with respect to Counts 3 and 4, well, of course the burden of proof remains with the State at all times. He has to show whatever exemptions he is entitled to under that and I don't think he is required to do that because exemptions are not set forth in the act. As in the rape case where it says a person not his wife, or not married to that person, then, that's in the facts itself so the State has to prove the negative there. So I think Counts 3 and 4 are all right.

"I think Count 2 is all right but I don't think Count 1 is. I will sustain the motion as to Count 1 because it doesn't charge what he sold. I mean— in other words this is just the same if I charge Johnson from stealing from Bill Smith, I have got to define in that Count 1 that he stole his car or his

chickens or whatever and this count doesn't do it. I assume the State wants to move to amend?

"MR. WALTER: Move to amend Count 1 to conform with the bill of particulars: Beginning on the —

"THE COURT: Well, to conform to the evidence at the preliminary hearing.

"MR. WALTER: And to conform to the bill of particulars but specifically after the word in connection with the offer of sale the purchase of securities we would insert language that says, to wit, an interest in a limited partnership, Emporia Street Limited Partnership and a general partnership.

"THE COURT: Well, I will allow you to amend in accordance with the evidence at the preliminary hearing.

. . . .

"MR. WACHTEL: My understanding of your ruling, and please correct me if I am wrong, my motion was to dismiss Count 1 and if your Honor did, is that your ruling?

"THE COURT: Well, I dismissed it subject to their being able to amend it or maybe you should say not dismiss it but I sustained your objections to it because I am in an awkward position on jeopardy here.

. . . .

"THE COURT: Well, my dismissal was purely to the form of it and not to the effect that he was improperly bound over. He was bound over on a charge [on] which sufficient evidence was placed. He has never been charged correctly with respect to that binding over is what my ruling is."

Although somewhat confusing, the trial court's action amounted to a granting of defendant's motion for specificity. The amendment permitted by the State simply specified that the crimes charged in count I were related to the sale of interests in ESLP and NRRLP. The information found wanting by the court charged the defendant with fraud but failed to specify what specific items the fraud concerned. The court's action corrected that situation.

The defendant's reliance on *Lowe* and *Smalis* is misplaced. Those were actions in which the State had presented its evidence and rested. After the State rested, the trial court found the evidence wanting and took action to acquit the defendant. This did not happen in this lawsuit. The trial court was acutely aware of the jeopardy argument and did not take any action that can be construed as acquitting the defendant. In essence, the trial court agreed with defendant that the information was too vague, lacked specificity, and did not charge the crimes defendant was bound over on. This case is similar to *State v. Love*, 5 Kan. App. 2d 768, Syl. ¶ 1, 625 P.2d 7, *rev. denied* 229 Kan. 671 (1981). In

that case, the defendant's conviction was reversed because the information was defective and failed to give the court jurisdiction. We held: "Double jeopardy is not a bar to a second criminal prosecution based upon the same criminal act that resulted in a previous conviction when the judgment entered on the previous conviction had been arrested because the trial court lacked jurisdiction."

The trial court in the instant matter, at most, dismissed a defective information which would have deprived it of jurisdiction. The filing of an amended information by the State did not, under these facts, subject the defendant to unconstitutional double jeopardy.

## IS DEFENDANT ENTITLED TO A PRELIMINARY HEARING AND A NEW TRIAL ON COUNT I?

In the previous section, we dealt with the ramifications of the trial court's action concerning count I of the third amended information. The defendant extends his complaints about that action by now claiming that the trial court lost jurisdiction over him by its actions and must now start over by giving him a new preliminary hearing on count I. We conclude defendant's argument is without merit.

The defendant's argument is somewhat duplicitous. On the one hand, he argued long and hard at the trial level, and on appeal, that the information was so defective that the trial court failed to acquire jurisdiction. He now complains that action taken by the trial court to rectify his original complaint resulted in a loss of jurisdiction. We can only remark, charitably, that defendant is attempting to "cover all of the bases."

We view the action taken by the trial court as action intended to avoid loss of jurisdiction due to a defective information. That action did not violate defendant's rights against double jeopardy and neither does it entitle him to a new trial and a new preliminary hearing. The information was amended to conform it to the crimes for which defendant was bound over. Neither the trial court's action nor the State's amendment of the information resulted in a loss of jurisdiction. We hold defendant's argument in this regard to be unavailing.

## WAS IT ERROR TO PERMIT THE STATE TO AMEND THE INFORMATION?

The defendant's next issue concerns count II of the information.

Count II originally charged the defendant with committing fraud and deceit in connection with the "offer, sale or purchase of securities *to* the North Rock Road L.P. . . . which operated or would operate as a fraud or deceit upon North Rock Road L.P." The second amended information, which was never filed, simply restated the original language and, after "deceit upon NRRLP," added the words, "Specifically but not limited to Gladys Anderson, Gerald Cass, and Lois Ann Swartz." The third amended information, upon which defendant was tried, eliminated the words "would operate as a fraud or deceit upon NRRLP" and added "would operate as a fraud or deceit upon Gladys Anderson, Gerald Cass, and Lois Ann Swartz."

The defendant argues that the third amended information was amended in such a manner as to charge a new crime. Defendant states that, as originally drawn, the information charged him with committing securities fraud on NRRLP. The third amended information, he insists, charges him with defrauding Anderson, Cass, and Swartz—a new crime.

K.S.A. 22-3201(4) provides: "The court may permit a complaint or information to be amended at any time before verdict or finding *if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.*" (Emphasis added.)

The question is twofold: (1) Did the amendment charge a new or additional crime? *and* (2) Were the substantial rights of the defendant prejudiced?

We conclude that both questions must be answered in the negative. Under the circumstances, it was within the discretion of the trial court to permit the amendment, as to both form and substance, after the arraignment and plea but before the commencement of trial. *State v. Osburn*, 216 Kan. 638, Syl. ¶ 1, 533 P.2d 1229 (1975).

Under the settled law of this State, adding words to an information which changes the method by which the particular crime was committed does not charge a new additional crime. *State v. Saylor*, 228 Kan. 498, 504, 618 P.2d 1166 (1980). See *State v.*

*Bell,* 224 Kan. 105, 106, 577 P.2d 1186 (1978); *State v. Lamb,* 215 Kan. 795, 798, 530 P.2d 20 (1974).

In the case under consideration, the court permitted the State to amend by adding the names of three investors of NRRLP who were defrauded. The change was made in response to defendant's objections and to conform the information to the evidence presented at the preliminary hearing. We do not consider the amendment to charge a new or additional crime.

The information originally charged defendant with securities fraud. The amended information also charged securities fraud but with more specificity as to who was defrauded. The original information charged defendant with having defrauded NRRLP. This amounted to a charge of fraud against all of the partners in NRRLP. The amendment merely named specifically some of those partners. It did not name different victims, merely more specific ones.

In addition, there is no prejudice shown to defendant by the amended information. The addition of the three victims' names was certainly no surprise to the defendant. He was present throughout the preliminary hearing and heard the evidence of the State which was offered to show how he defrauded Anderson, Cass, and Swartz. The bill of particulars filed by the State also detailed the alleged defrauding of the three individuals named. The defendant fails to show how he was prejudiced by the amended information.

In order to obtain a reversal of his conviction on the grounds asserted, defendant must show that a new or additional crime was charged *and* that he was prejudiced by the amendment permitted. He has shown neither.

## PRELIMINARY HEARING

The defendant next argues that there was insufficient evidence presented at the preliminary hearing to justify binding him over for trial.

Although we consider this contention to be without merit, we do not believe it is properly before us.

The sufficiency of a preliminary hearing may only be challenged by a motion to dismiss or to grant appropriate relief. *State v. Smith,* 215 Kan. 34, 37, 523 P.2d 691 (1974). Under K.S.A. 1990

Supp. 22-3208(4), a "motion to dismiss shall be made at any time prior to arraignment or within 20 days after the plea is entered." The Supreme Court in *Smith* held that a failure to raise the sufficiency of the preliminary hearing by such a motion within 20 days after arraignment constitutes a waiver and precludes review on appeal. *State v. Smith,* 215 Kan. at 37.

In the matter now before us, the defendant waived arraignment and entered a plea of not guilty. He filed no motion within 20 days of his arraignment as required by K.S.A. 1990 Supp. 22-3208(4). We hold that, pursuant to the holding in *Smith,* defendant is precluded from raising this issue for the first time on appeal. See *State v. Matzke,* 236 Kan. 833, 838-39, 696 P.2d 396 (1985); *State v. Lashley,* 233 Kan. 620, 623-24, 664 P.2d 1358 (1983); *State v. Weigel,* 228 Kan. 194, 201, 612 P.2d 636 (1980).

## WAS THE TRANSFER OF UNITS IN NRRLP TO DR. MENHUSEN A SALE?

One of the transactions proven by the State was the transfer of units in NRRLP to Dr. Menhusen. The State contended this transfer was a sale. The defendant insists that it was not.

This issue is germane to the question of whether defendant came within the isolated transaction exemption under K.S.A. 17-1262 and K.A.R. 81-5-3. Under the exemption provided, the defendant could have made no more than five sales of securities per year without being registered as a broker/dealer with the Kansas Securities Commission (KSC). The information in count III charged defendant with sales made while not being registered as a broker/dealer as required by law.

The facts show that the defendant sold an interest in NRRLP to Menhusen for $10,000. Menhusen made the check payable to the defendant, who then deposited the check in his personal bank account. Since the shares purchased by Menhusen came from NRRLP itself, the defendant then wrote a check to NRRLP for $10,000.

The defendant argues that no sale could have taken place *as a matter of law* because he made no gain or profit on the transaction.

The question of whether the transaction with Menhusen was or was not a sale was clearly a question of fact to be decided by

the jury. We are aware of no authority, and none is cited to us, which indicates that a transaction is not a sale unless a profit is made. The facts clearly show that Menhusen purchased an interest in NRRLP for $10,000 and that the defendant sold him that interest. A "sale" under K.S.A. 17-1252(h)(1) is the sale of a security "for value." The defendant received $10,000 for the interest sold to Menhusen. The receipt of $10,000 for a security is clearly something of "value." The determination of whether this was a "sale" turned on whether it was made by the defendant "for value"; it has nothing to do with whether he made a profit. Thus, the argument that no sale took place since defendant paid the $10,000 back to NRRLP is without merit.

We hold that the evidence was clearly sufficient to show that the transfer made to Menhusen was a sale within the meaning of the Kansas securities laws.

## INSTRUCTIONS ON COUNTS III AND IV

The defendant next argues that the instructions on counts III and IV were erroneous. His principal contention is that the manner in which the instructions were numbered and given unduly emphasized the State's case and de-emphasized his. In summary, defendant appears to argue the instructions were biased against him.

As was the case in defendant's earlier objection to instructions, the record shows the objection was not raised to the trial court. The question, therefore, for our decision is whether the instructions were clearly erroneous. We hold they were not.

Instructions 14 and 15 advised the jury, respectively, that defendant was charged with the crimes of selling securities when not registered as a broker/dealer and with selling securities not properly registered with the KSC. Both instructions tell the jury the alleged sales, concerning units of NRRLP, were made to Lois Ann Swartz or Ruth Gerstner and were made August 5, 1985, through August 8, 1985, in Sedgwick County.

The defendant was charged in counts III and IV with registration violations under K.S.A. 17-1254 and 17-1255. These violations concerned the sale of units of NRRLP to Lois Ann Swartz and/or Ruth Gerstner in count III and the sale of units of NRRLP

to Gladys Anderson, Gerald Kass, Lois Ann Swartz, and/or Ruth Gerstner in count IV.

Any sale of a security while the seller is unregistered is a violation of the law. However, because of the isolated transaction exemption, such sales are not criminal until they exceed 5 in a 12-month period. The defendant relied on the isolated transaction exemption as a defense to counts III and IV. He complains that instructing the jury on the State's case without reference to his affirmative defense was error. The jury was instructed on defendant's isolated transaction defense by instructions 19 and 20. The defendant complains about instructing on the State's case first and not calling the attention of the jury to instructions 19 and 20 within instructions 14 and 15.

We see no reversible error in the defendant's position on instructions 14 and 15. Instructions 14 and 15 set out properly the elements of the crimes of selling unregistered securities and selling as an unregistered broker/seller as defined by K.S.A. 12-1254 and 12-1255. Each instruction clearly states the burden of proof was on the State.

We see no merit in defendant's claim that instructions 14 and 15 unduly emphasize the State's case. When determining the propriety of instructions, our standard of review requires us to examine all of the instructions together, and, if one side is not emphasized more than the other, there is no error. See *Trout v. Koss Constr. Co.,* 240 Kan. 86, 88-89, 727 P.2d 450 (1986). The instructions setting forth the isolated transactions defense recounted the exact requirements of K.A.R. 81-5-3 that were in effect during the time frame in question.

Our review convinces us that the instructions of counts III and IV correctly and fairly stated the law. In reviewing all of the instructions, we do not find that defendant was prejudiced in any way by a bias in favor of the State. We hold that the instructions for the State were not emphasized more than were the instructions for the defendant.

The defendant argues that the evidence showed only 5 sales of units of NRRLP in a 12-month period and, thus, defendant should have been acquitted. We do not agree. The State's evidence showed 6 sales of units of NRRLP in a 12-month period—

enough to overcome the affirmative defense of the isolated transaction exemption.

## DOES THE REVERSAL OF COUNT II REQUIRE US TO REVERSE COUNTS III AND IV?

We have reversed the defendant's conviction on count II because of the erroneous giving of instruction 21. The defendant submits that, if count II is reversed, it would require the reversal of counts III and IV. We do not agree.

The defendant's argument again goes to the isolated transaction defense. He argues that, in order to convict him on counts III and IV, the State must prove that he sold at least six units of NRRLP. Thus, he argues a reversal of count II will mean he was only guilty of five sales and is exempt from criminal liability.

We fail to see any connection between the affirmative defense to counts III and IV and the crime charged in count II.

In count II, the defendant was charged with selling securities through the use of fraud, deceit, material misrepresentations, and omission of material facts. The isolated transaction defense is not a defense to the crime charged in count II. The law exempts one from criminal liability for selling securities while unregistered if those sales number less than 6 in a 12-month period. However, use of fraudulent devices to sell securities is a crime regardless of whether there are 1 or 100 sales involved.

While we may have reversed the defendant's conviction for fraud on count II, it does not mean that the defendant did not make the sale in question. That sale may be used to overcome the isolated transaction defense and convict on counts III or IV. We simply see no connection or interrelation between the two.

The errors found as to count II are in no way interrelated to a claim of exemption under counts III and IV or to the total number of NRRLP sales which form the basis for defendant's convictions under counts III and IV. We hold defendant's argument to be without merit.

The defendant's conviction on count II is reversed, and the matter is remanded for a new trial on the allegation of count II. The defendant's convictions on counts I, III, and IV are affirmed.

Affirmed in part, reversed in part, and remanded.