(115 P.3d 771)
No. 92,125

STATE OF KANSAS, *Appellee*, v. ELIZABETH A. MEHLING, *Appellant*.

Opinion filed July 15, 2005.

*Virginia A. Girard-Brady*, assistant appellate defender, for appellant.

*Scott M. Schultz*, special assistant attorney general, and *Phill Kline*, attorney general, for appellee.

Before GREEN, P.J., MARQUARDT and MCANANY, JJ.

MCANANY, J.: Elizabeth A. Mehling appeals from her convictions for three counts of unlawful acts in connection with the offer, sale, or purchase of securities in violation of K.S.A. 2004 Supp. 17-1253. We affirm.

Elizabeth, a financial planner from Scotland, met Michael Mehling while he was stationed in the United States military in Germany. They married in September 1992.

In June 1994, the Mehlings were stationed in El Paso, Texas, where Elizabeth was involved in a multi-level marketing company known as Jewelry International. They were transferred to Leavenworth, Kansas, in January 1995 where Michael served until his retirement from the military in July 1996.

The Mehlings became involved in Investors International, apparently another multi-level marketing operation, where they learned about a program that claimed to give individuals the opportunity to pool their funds with others in order to invest in overseas bank debentures for very high returns in a very short period of time. The Mehlings began selling these overseas investments. They set up a partnership named Dunromin and opened a bank account for the partnership at the Ft. Leavenworth Credit Union. Both of the Mehlings were listed as owners of the account.

In 1995 Elizabeth met and befriended Inge Cochran, a Leavenworth real estate agent. She told Cochran about the Dunromin business and that she was a financial broker. The Mehlings sold Cochran Investor International materials and helped her make some sales. They also explained to her the European investment program. Michael told Cochran that their overseas investments were guaranteed safe and lucrative. The Mehlings told her that she would not lose her money and that they had invested in the program themselves. They provided documents to her that indicated that the investment was risk-free. They told Cochran that if she invested $15,000, she would receive $1,000,000 in 2 months.

Based on these outlandish representations, Cochran withdrew $15,000 from her IRA account on November 19, 1996, and gave Michael a cashier's check made payable to Dunromin. Cochran's $15,000 investment was deposited into the Dunromin account on November 21, 1996. On the same date, $13,000 was transferred into the Mehlings' personal account. The remaining $2,000 was withdrawn as cash on November 26, 1996.

Cochran later asked Elizabeth whether the people she was dealing with were honest. Elizabeth assured Cochran that they were.

Abdul Ghafoor also invested with the Mehlings in November 1996. The Mehlings told him he could double a $5,000 investment in 3 or 4 months. He gave the Mehlings $5,000 to invest in the form of money orders paid to the order of Dunromin. Ghafoor's $5,000 was deposited in the Dunromin account on November 20, 1996. The funds were immediately transferred to the Mehlings' personal account that same day and then immediately withdrawn as follows: $1,800 in cash plus three money orders totaling $3,000. Two of the money orders were made payable to Investors International. The other was made to a travel agency. Ghafoor's entire $5,000 investment was expended on the day it was deposited.

Several months after making his investment, Ghafoor began a series of almost daily telephone calls demanding his money. The Mehlings ultimately returned Ghafoor's original $5,000 investment in July 1998 by means of a check drawn on their personal account.

By January 20, 1997, 2 months after her investment, Cochran had received neither the return of her $15,000 nor her $1 million. The Mehlings told Cochran that she would eventually receive her money. From 1997 through the early part of 1999 Cochran made numerous phone calls to the Mehlings regarding her investment. Cochran was continually assured that her investment would pay off.

In August 1998, Juli Rhame, a real estate agent in South Carolina, met the Mehlings when they came to South Carolina to look for a house. The Mehlings had been referred to Rhame by Cochran. Michael told Rhame that they sold debentures overseas. The Mehlings told her about the overseas debenture program and made the modest claim that she could invest from $1,000 to $50,000 and

would receive from 10% to 1,000% on her investment in approximately 10 international banking days. Both Elizabeth and Michael told her that the investment was risk-free.

In January 1999, Rhame participated in a conference call with the Mehlings. Michael told her that Cochran had invested $100,000 in the program and done well. Rhame later spoke to Cochran who told her that she had only invested $15,000 and had not received back her original investment, let alone any profit. Rhame decided not to invest with the Mehlings.

Cochran eventually complained to the Kansas Attorney General, and the matter was referred to the Office of the Securities Commissioner, which led to an investigation and charges being filed against the Mehlings in November 2000.

Elizabeth was charged with four counts of unlawful acts in connection with the offer, sale, or purchase of securities in violation of K.S.A. 2004 Supp. 17-1253. Michael negotiated a plea agreement with the State. He pled no contest to one count of conspiracy to commit securities fraud. Elizabeth was identified as his coconspirator. John Runnberg, an investigator with the Kansas Securities Commissioner's office, analyzed the Mehlings' financial records and tracked the money in both the Dunromin account and the Mehlings' personal account. He testified that it appeared all of Ghafoor and Cochran's investments were used to pay the Mehlings' personal expenses and that none was pooled with other funds for investment as promised. Elizabeth was found guilty of the three counts involving Ghafoor, Cochran, and Rhame. She was sentenced to 60 months' probation. She now appeals.

*Jury Instructions*

Elizabeth claims the district court erred in instructing the jury. Our task is to consider the instructions as a whole, and not to focus on any one instruction, in order to determine if they properly and fairly state the law that applies to the facts of the case. We must then determine if the jury could reasonably have been misled by them. If they accurately state the law and could not reasonably have misled the jury, we will not reverse even if they are in some

way erroneous. *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

*Specific Intent*

Elizabeth claims the district court erred in instructing the jury that specific intent was not required to prove a violation of the Kansas Securities Act. The district court instructed the jury, over Elizabeth's objection, "No specific intent is required where one violates the Kansas Securities Act, except the intent to do the act denounced by statute."

Notwithstanding the holdings in various Kansas cases to the contrary, Elizabeth claims that securities fraud under K.S.A. 2004 Supp. 17-1253 is a specific intent crime. The rule in *State v. Hodge*, 204 Kan. 98, 107, 460 P.2d 596 (1969), still applies: "No specific intent is necessary to constitute the offense where one violates the securities act except the intent to do the act denounced by the statute. [Citation omitted.]" See *State v. Ribadeneira*, 15 Kan. App. 2d 734, 750, 817 P.2d 1105, *rev. denied* 249 Kan. 778 (1991); *State v. Kershner*, 15 Kan. App. 2d 17, 20, 801 P.2d 68 (1990).

This rule was found in *Ribadeneira* to apply to the particular statute under which Elizabeth was convicted, K.S.A. 2004 Supp. 17-1253(a). Elizabeth urges us to reconsider *Ribadeneira* because the court used the reasoning in *Hodge*. Elizabeth claims *Hodge* is not applicable because it did not involve a securities fraud violation under K.S.A. 2004 Supp. 17-1253. The defendant in *Hodge* was convicted of selling unregistered securities and of failing to register as a broker-dealer for their sale. With regard to the issue of intent, this is a distinction without a difference. The Supreme Court couched its language in *Hodge* to apply to the entire Kansas Securities Act, not just the sale of unregistered securities by an unregistered broker. We are duty bound to follow *Hodge* absent an indication that the Supreme Court is departing from its position. *State v. Jackson*, 30 Kan. App. 2d 288, 299, 41 P.3d 871 (2002). We see no such indication. The general-intent principle in *Hodge* applies to Elizabeth's crime of securities fraud.

Further, this interpretation is consistent with the opinion of the United States Supreme Court in considering § 17(a) of the Secu-

rities Act of 1933 in *Aaron v. SEC*, 446 U.S. 680, 64 L. Ed. 2d 611, 100 S. Ct. 1945 (1980). Our Kansas statute at issue closely follows § 17(a) of the 1933 Act. The Supreme Court found no scienter requirement in the subsections comparable to those under which Elizabeth was tried. We pay particular attention to cases interpreting the Federal Securities Act of 1933, upon which the Uniform Securities Act and the Kansas Securities Act were patterned. *Kershner*, 15 Kan. App. 2d at 18. Thus, pursuant to the provisions of the statute upon which Elizabeth was convicted, scienter was not required.

## Aiding and Abetting

The district court also gave the following instruction on aiding and abetting:

"A person who, either before or during its commission, intentionally aids, abets, advises, hires, counsels, procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of a crime."

Elizabeth does not claim there was insufficient evidence to support the giving of this instruction. Rather, she claims that even if scienter is not required in order to establish a securities violation, the "no specific intent is required" instruction we discussed earlier should not have been given because it conflicts with the jury instruction on aiding and abetting, which is a specific intent crime.

In *State v. Amos*, 271 Kan. 565, Syl. ¶ 2, 23 P.3d 883 (2001), the court stated:

"The State need not charge aiding and abetting in the charging document in order to pursue an aiding and abetting theory at trial. If, from the totality of the evidence, a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crime, then it is appropriate to instruct the jury on aiding and abetting."

Elizabeth was not charged with aiding and abetting. Nevertheless, this instruction on aiding and abetting properly sets forth the law that supported one of the State's trial theories: that Elizabeth is guilty of illegal conduct in the offer, sale, or purchase of securities

in violation of K.S.A. 2004 Supp. 17-1253 because she aided and abetted Michael in the scheme to defraud investors.

If the jurors properly determined from the facts that Elizabeth acted as a principal in the scheme to defraud investors, then the mere doing of the act prohibited by the statute supports a conviction without a showing of specific intent. If, on the other hand, they determined she merely aided and abetted Michael in the fraud, this instruction gave them proper guidance on the specific intent needed to support such a finding. Thus, the instruction properly states the law, was warranted under the facts, and was not the source of potential juror confusion.

### *Sufficiency of the Evidence Guilt as a Principal*

Elizabeth argues that she should have been charged with the crime of aiding in a felony, rather than as a principal. The essence of her argument appears to be a challenge to the sufficiency of the evidence to support her conviction as a principal. In considering this argument, we review the evidence in the light most favorable to the State to determine if there is substantial competent evidence to support Elizabeth's conviction. See *Mays*, 277 Kan. at 377.

As disclosed in the amended information, Elizabeth was charged with securities fraud in connection with transactions involving Nathela Crooks, Abdul Ghafoor, Inge Cochran, and Juli Rhame. She was found guilty of the charges involving Ghafoor, Cochran, and Rhame. With respect to Rhame, the jury found Elizabeth guilty based upon the offer of the securities since no sale was completed.

There was substantial competent evidence that both Ghafoor and Cochran invested their money with the Mehlings based on statements made by Elizabeth. Ghafoor made references to statements "they" made, referring to statements by Michael and Elizabeth. Viewed in a light most favorable to the State, these included statements by Elizabeth that Ghafoor would be investing in a good project that the Mehlings had faith in, that they would pool Ghafoor's money with money from other investors, and that Ghafoor would double his money in 3 or 4 months.

Elizabeth told Cochran that the program to invest overseas was wonderful and would be a good thing for Cochran to invest in. She

told Cochran that she and Michael had made investments through the program, and she guaranteed to Cochran that there was no risk of Cochran losing her money. She described to Cochran the details of overseas investing. She assured Cochran that the overseas traders involved in the program were honest, and Cochran did not have to worry about it. Cochran was promised $1 million in a period of 2 months following a $15,000 investment.

Though Juli Rhame did not invest in the program, in an effort to get her to invest Elizabeth and Michael described the overseas investing program to her as an elite, invitation-only program. They told her that if she participated she would receive a return on her investment of 10% to 1,000% within 10 international banking days and that the program was risk-free.

There was substantial competent evidence to support Elizabeth's convictions as a principal on these three counts.

*Sufficiency of the Evidence Guilt as an Aider and Abetter*

Elizabeth claims there was insufficient evidence to convict her of aiding and abetting securities fraud, which involves specific intent, because the State did not present any specific evidence regarding her intent. Specific intent, however, may be established by inferences reasonably deduced from the facts and circumstances of the case. *State v. Pratt*, 255 Kan. 767, 769, 876 P.2d 1390 (1994).

Were there facts and circumstances here from which the jury could have reasonably concluded that Elizabeth acted with the requisite intent? Clearly, there were. Elizabeth had experience as a licensed mutual funds sales person and financial planner even before she met and married Michael. She and Michael operated as a team in their overseas investment program. Together they made representations to prospective investors to solicit funds. They were partners in Dunromin, through whose account they funneled investor funds. They transferred investor funds to their personal account. Elizabeth can be found guilty of securities fraud as an aider and abetter if she intentionally assisted Michael in defrauding investors or soliciting investors through fraudulent means. Elizabeth does not question Michael's guilt. Nor do we. There was sufficient evidence for a reasonable jury to find that Elizabeth had the spe-

cific intent necessary to aid and abet Michael in the commission of their criminal acts.

## Cumulative Errors

There being no errors to accumulate, Elizabeth's claim of cumulative errors that require reversal fails.

Affirmed.